## The Lake Superior Ship Canal, Railway & Iron Company v. Charles H. McCann et al.

*Fixtures—Landlord and tenant—Lien for rent—Execution sale.*

Complainant, as lessor of a mining lease, filed a bill to enjoin the removal by the defendants of an engine and boiler and their attachments, purchased by them at a sale under an execution issued on a judgment against the assignee of the lessee, from the engine and boiler house, in which the property was set in masonry and firmly attached to the land, claiming that it became a fixture by such annexation, and passed to complainant on the termination of the lease. The lease provided for the surrender of the leased premises at the expiration of the term or other termination of the lease, "with all the stopes, supports, shafts, and other improvements and erections that may be thereon, engines, boilers, machinery, tools, implements, and other movable personal chattels excepted," and gave the lessor a lien upon all ores that should be mined, and all improvements and fixtures, and upon all machinery, implements, and personal chattels of the lessee that should be on the premises, as security for rent, etc., which lien might be enforced against such property in like manner as liens conferred by chattel mortgage. And in affirming a decree dismissing complainant's bill the Court hold:

   *a*—The parties having agreed to treat the engine, boiler, and their attachments as personal property, as shown by the lease, the manner of their annexation to the soil or to the buildings erected thereon becomes immaterial; citing *Manwaring v. Jenison,* 61 Mich. 117; *Booth v. Oliver,* 67 Id. 664.

*b*—No steps having been taken to reduce the property to possession prior to the levy, the lien, being unrecorded, was worthless as against the defendants; the case being ruled by *Booth v. Oliver*, 67 Mich. 664.

Appeal from Gogebic. (Daboll, J., presiding.) Argued April 23, 1891. Decided May 15, 1891.

Bill to restrain the removal of certain mining machinery attached to leased premises. Complainant appeals. Decree dismissing bill affirmed. The facts are stated in the opinion.

*Ball & Hanscom,* for complainant.

*Hayden & Young,* for defendants.

MORSE, J. The complainant is the owner in fee of a certain parcel of land in Gogebic county, upon which is a mining location, containing buildings, machinery, etc., for the purpose of mining iron ore. This mine was formerly known as the "First National Iron Mine," and was equipped and worked as such.

The bill of complaint alleged that, among the buildings and fixtures on said mining location, and attached to the land, and a part thereof, and belonging to complainant, was an engine and boiler house, containing a boiler and engine and hoisting machinery, set in masonry and firmly attached to the land, which is a part of the mining plant belonging to complainant, and necessary for use in operating said mine; that the defendants were making preparations to enter upon the premises, to destroy the mason-work and other fastenings by which said machinery is fastened to the land, and threatened to detach said machinery from the land, and remove the same away by force. The bill prayed for an injunction to restrain such threatened action.

The defendants answered, practically admitting the

ownership of the land to be in complainant, but claiming that they were the owners of the machinery, and had a right to remove it.

Upon pleadings and proofs the complainant's bill was dismissed in the court below.

The proofs show that on the 20th day of July, 1886, the complainant executed a mining lease of the premises to one John E. Burton, " for the uses and purposes of exploring for, mining, taking out, and removing therefrom the merchantable iron ores which are or may be found therein," and giving the lessee the right to erect such buildings, machinery, and other improvements as should be necessary or convenient for the purposes aforesaid.    The lease ran for 20 years from July 20, 1886, unless sooner terminated, and was upon the condition that payment should be made quarterly for all iron ore taken from said land by the lessee or his assignees at a rate depending upon the market value, or upon the price at which such ore should be sold.    Such royalty was to be paid on the 20th of the months of January, April, July, and October for the ore removed during the three calendar months next preceding.    The lessee also covenanted to pay as royalty on ores removed, or rent of premises, at least $9,000 in each and every year during the continuance of such lease.    It provided for forfeiture and re-entry, "without further notice or demand," in case of breach of any covenants contained in the lease, and a continuance of such breach for 60 days.

August 20, 1886, Burton assigned said lease, together with all his rights thereunder, to the First National Iron Mining Company.    This company took possession of the mine and the property connected therewith, and commenced mining, in the fall of 1886, soon after the assignment.    While this company was in possession, and on the 8th day of February, 1888, attachments against

the First National Iron Mining Company were levied on the property in question in this suit as personal property. Judgments were obtained in these attachment suits, and the property, which had remained after levy of the attachments in the hands of. the sheriff, was sold on execution to the defendants Bingham and Perrin, August 17, 1888. The defendants had commenced the removal of the property when this bill was filed, and were really in possession of it.

The defendants' claim that this property is personalty, and not realty, is based upon the following clauses in the lease:

1. "That at the end of said term, or other termination of this lease or demise, it will peaceably surrender said premises to said party of the first part, or those having its estate therein, with all the stopes, supports, shafts, and other improvements and erections that may be thereon, *engines, boilers, machinery, tools, implements, and other movable personal chattels excepted,* in good order and condition."

2. In providing for a lien, the lease stipulates that the party of the first part "shall at all times have, possess, and hold a lien upon all ores that shall be mined, and all improvements and fixtures that shall be on said premises, and upon all machinery, implements, and personal chattels of said party of the second part that shall be on said premises, as security for the payment of the rents, royalties, and taxes above mentioned, and any moneys that may be due or owing under this indenture."

. We think this claim is correct. We are satisfied from these clauses and the lease, taken as a whole, that the intention of the parties to this lease was to make the engine and boiler and their attachments personal property. This being so, under repeated rulings of this Court it becomes entirely immaterial how they were fastened to the soil or to buildings, and the argument, based upon the manner of such fastening, in this case, can have no weight in determining their character as

personalty or realty.    See *Manwaring v. Jenison*, 61 Mich. 117, and cases there cited at page 135.

The complainant also claims that the defendants have no title to or right to remove this property, for the following other reasons:

"1. Because it is shown that before the levy of the execution under which the defendants claim, or even the alleged levy of the attachment, the First National Iron Mining Company had sold the property to the Bessemer Consolidated Iron Company.

"2. Because, if the title to the property had not passed from the First National Iron Mining Company by such sale, it was tenant's fixtures, and movable only during the tenancy, and the tenancy had been terminated long before the attempted removal.

"3. Fixtures forming part of a mine belong to the estate, whether freehold or leasehold, and cannot be levied on, severed, and sold separately from the estate.

"4. Complainant had a lien on the fixtures for a large amount."

In answer to these reasons it may be said:

*First.* It is true that before the levying of the attachments the First National Iron Mining Company had conveyed, or undertook to convey, its interest in the mine, and the personal property attached, to the Bessemer Consolidated Iron Company, but it had not yet parted with its possession.   The complainant, having no title to the property, can hardly ask for an injunction against its removal, when it has no privity with the Bessemer Company, or any rights growing out of the conveyance to that company.   The defendants may have no title to the property as against the Bessemer Company, but the complainant is in no situation to litigate that matter in this suit, and has no concern with it.

*Second.* This property cannot be considered as trade fixtures, as by the express agreement of the parties it

was made personal property, with no agreement, either express or implied, that it should in any possible event be treated as trade fixtures. Being personal property, and treated in the lease the same as "other movable personal chattels," it never ceased to be anything but personalty, and its attachment to the buildings by masonry did not change its character. *Booth v. Oliver*, 67 Mich. 664, 669. It may here be noted that the same distinction between "improvements" and "machinery" is found in this lease as in the one considered in *Booth v. Oliver*.

This also meets the *third* claim of complainant.

*Fourth.* The claim under the lien in this case also falls within the ruling of this Court in *Booth v. Oliver*. There had been no steps taken before the levy to reduce this property to the possession of the complainant. The lien, although providing that it might be "enforced against such property in like manner as liens conferred by chattel mortgage are or may be enforced under the laws of the State of Michigan, or in any other suitable and lawful manner," was worthless, as against these defendants, for the reason that it was not recorded as a chattel mortgage, or in the proper place for the record of such an instrument. *Booth v. Oliver*, 67 Mich. 669.

The decree is affirmed, with costs.

The other Justices concurred.