YOUNG et al., Appellants, v. EVANS-SNYDER-BUEL COMMISSION COMPANY.

### Division One, November 12, 1900.

1. **Chattel Mortgage:** SUBJECT TO PRIOR UNRECORDED MORTGAGE. One who takes a conveyance, absolute or conditional, which recites that it is second or subordinate to some other mortgage or lien, is not the purchaser of the entire thing conveyed thereby. He purchases only the surplus or residuum after satisfying the other incumbrance.

2. ————; LACK OF ACKNOWLEDGMENT: RECORD: PRIORITY OF LIENS. Where the statute (of Arkansas) provides that a chattel mortgage can not be a lien or a valid conveyance until it is recorded, and that it must be acknowledged before it can be recorded, yet if the grantee in a subsequent mortgage recited therein that it is taken by him as a subordinate lien and subject to the other unrecorded or irregularly recorded mortgage, he can not claim the property or any interest therein until the previous mortgage is satisfied. A mortgage expressly providing that it shall be subject to a prior mortgage is subject to it independently of the fact that the prior mortgage is not of record; nor will it alter matters to record the subsequent mortgage first.

Appeal from Jackson Circuit Court.—*Hon. Jno. W. Henry,* Judge.

AFFIRMED.

*Botsford, Deatherage & Young* for appellants.

The chattel mortgages to Pierce and defendant, under which defendant claims, not having been lawfully acknowledged and recorded, did not become valid liens on the lazy S cattle as against appellants, who by virtue of their mort-

gage became subsequent purchasers of the same cattle, and who were also creditors of Skinner, the common debtor of all the parties. As against appellants, both as creditors and purchasers, defendant had no lien under either of its mortgages, and as plaintiffs' mortgage did not create any lien in favor of defendant, but was made subject only to a preexisting lien for $22 per head, which lien did not exist, it results that defendant has no right to the lazy S cattle, and that appellants should have been given judgment therefor. See sections 651, 656, 660, 4742, 4743, 4750, 4751, 4752, 4753, 4754 and chapter 126 of "Mansfield's Digest of the Statutes of Arkansas for 1884." See also the following decisions of the Supreme Court of Arkansas, construing said statutes: Main v. Alexander, 9 Ark. 112; Carnall v. Duvall, 22 Ark. 142; Haskill v. Sevier, 25 Ark. 158; Dodd v. Parker, 40 Ark. 539; Martin v. Ogden, 41 Ark. 192; Challis v. German Nat. Bank, 51 Ark. 88; Brooks v. Owen, 112 Mo. 251.

*H. M. Pollard* for respondent.

Does a second mortgagee who recites in his mortgage that it is taken subject to certain specific liens on the mortgaged property stand in the same condition as a *bona fide* purchaser or mortgagee, without such stipulation in the mortgage and without any agreement or contract that his mortgage shall be subject to any prior incumbrance? Mead v. Maberry, 62 Mo. App. 557, was a chattel mortgage case and the court held that when one buys subject to a mortgage he can not dispute that mortgage. There the mortgage was unrecorded but the purchaser made his purchase subject to it. The court said: "The plaintiff purchased the property in recognition of the mortgage and not in antagonism to it. ........ When one buys property subject to a mortgage and

in recognition of it, he buys the equity of redemption in the property." Howard v. Chase, 104 Mass. 249; Tuite v. Stevens, 98 Mass. 305; Potter v. Bank, 23 N. Y. Sup. 1079; Dwight v. Lumber Co., 69 Mich. 127. In Pecker v. Silsby, 123 Mo. 108, the subsequent mortgage recited that it was subject to "prior mortgages to the amount in all of $8,000." The court said: "The plaintiffs (second mortgages) took only that which was conveyed: a right to redeem, and their mortgage though recorded first, does not take precedence of the mortgage to defendant." Lewis v. Burnham, 41 Kan. 546; White v. Foster, 102 Mass. 375; Eaton v. Tuson, 145 Mass. 218; Talbirt v. Horton, 31 Minn. 518; Floyd v. Comstock, 61 Mich. 522; Independent, etc., v. Paine, 122 Ill. 625; Price v. Pollock, 47 Ind. 362; Bank v. Brown, 112 Ind. 474; Cram v. Ingalls, 18 N. H. 613; Cooper v. Bigley, 13 Mich. 463.

*Botsford, Deatherage & Young* for appellants in reply.

Respondent's attorney assumes all through his argument that plaintiffs' mortgage was made subject to defendant's mortgages. There is nothing said or recited in plaintiffs' mortgage about either of the mortgages under which defendant claims. Plaintiffs' mortgage is made subject to a lien for $22 per head and the contention of plaintiff is, that at the time the mortgage to plaintiff was made neither of defendant's mortgages was a lien on anything by reason of the fact that those mortgages had not been recorded. Defendant's counsel seek to build up an argument on the assumption running through his entire argument, that plaintiff's mortgage recited and was made subject specifically to defendant's mortgages. The argument built up on that assumption falls with it.

BRACE, P. J.—On the eleventh day of November,

1895, Nat. Skinner, a resident of the Indian Territory, being the owner and in possession of 879 head of steer cattle, three years old and up, branded S. on the right side, in said territory, executed two chattel mortgages of that date, by one of which, he conveyed said cattle to A. H. Pierce to secure the payment of a note of the said Skinner of that date for the sum of $14,338, payable nine months after date, given to said Pierce in part payment of the purchase price for said cattle, and by the other he conveyed said cattle, subject to the Pierce mortgage, to H. M. Pollard, in trust, to secure the payment of a note of said Skinner of that date to the defendant in the sum of $5,254.17 payable 180 days after date for $5,000 cash advanced to him by defendant at that date.   On November 12, 1895, these two chattel mortgages were recorded in the proper office of the district of the Territory in which Skinner resided, and by the terms thereof the cattle when ready for market were to be shipped to the defendant, by it sold, and the proceeds after deducting commissions, applied to the payment of said promissiory notes and interest.   By section 31 an act of Congress, approved May 2, 1890 (U. S. Stat. at Large, 51st Cong., 1889-91, vol. 26, p. 94), certain general laws of the State of Arkansas as published in 1884 in the volume known as "Mansfield's Digest of the Statutes of Arkansas," were extended over and put in force in the Indian Territory, among which, were the recording acts of said State.   It is conceded that neither of these two chattel mortgages was acknowledged in accordance with the requirements of those acts, so as to entitle them to record, the first or Pierce mortgage having no formal acknowledgment to it, and the formal acknowledgment to the second mortgage having in fact been taken by a Missouri notary in the office of the defendant, which was in the State of Kansas, about twenty feet over the boundary line between the two States.

Afterwards on the twenty-eighth of February, 1896, the

said Skinner executed a third chattel mortgage by which he conveyed the said cattle, with others, to the plaintiff Odus G. Young, trustee, to secure the payment of his note of that date, for the sum of $8,010.25, payable on the first day of October, 1896, to said Young, trustee, and by him taken as "additional and collateral security," for the payment of several past due notes held by him for his co-plaintiffs, The First National Bank of Albany, New York, Mechanic's National Bank of New Bedford, Massachusetts, and Third National Bank of St. Louis, Missouri. This chattel mortgage was properly acknowledged and duly recorded in the Territory. Afterwards 722 head of these cattle, in pursuance of the terms of the first two mortgages, were shipped by Skinner to the defendant, by it sold, for the net sum of $15,232.66, and the proceeds applied to the payment of the debts secured by those mortgages, paying the Pierce mortgage note, of which defendant had become the holder, in full, and the other mortgage of defendant, in part.

Thereupon the plaintiffs instituted this suit in the Jackson Circuit Court to recover damages for the conversion of these and other cattle also shipped to and disposed of by defendant, and included in their said mortgage of February 28, 1896.

In the circuit court the plaintiffs obtained judgment for $702.12 on account of cattle other than the 722 head aforesaid, but were denied judgment for said sum of $15,232.66 on account of said 722 head, on the issue as to which, the plaintiffs asked and the court refused to give the following declarations of law:

"2. The court declares to the court, sitting as a jury, that the mortgage read in evidence by defendant, executed by Nat. Skinner to A. H. Pierce, dated November 11, 1895, to secure the sum of $14,338, evidenced by note due nine months after that date, was and is not acknowledged according to the

laws in force in the Indian Territory at the time of the execution of said mortgage, and the recording of said mortgage was, and is therefore null and void, and the court sitting as a jury, is instructed that said mortgage, not having been recorded as required by law, did not at any time become a lien on the property therein described in favor of the holder thereof, and said mortgage was and is void as to this plaintiff.

"3. The court declares to the court, sitting as a jury, that if you find from the evidence that the mortgage executed by Nat. Skinner to defendant, dated November 11, 1895, to secure the payment of $5,254.17, was acknowledged by said Skinner within the territorial limits of the State of Kansas, by a notary public, acting under the laws of the State of Missouri, then said acknowledgment was and is void, and said instrument was not entitled under said acknowledgment to be recorded, and the recording was in such case null and void, and in that case said chattel mortgage did not create a lien on the property therein described in favor of the said defendant, but in that case said mortgage was and is void, as to this plaintiff."

Thereupon the court declared the law upon that issue as follows:

"That neither the mortgage executed by Skinner to Pierce, nor the mortgage from Skinner to defendant, was acknowledged as required by law, and therefore the record thereof was not valid, and imparted notice to no one of their existence, and created no lien upon the cattle as against subsequent purchasers or mortgagees; but having taken the cattle, subject to specific liens as to amount mentioned in their respective mortgages, being the amounts of the debts mentioned in the Pierce mortgage and the defendant's mortgage respectively, which were valid and binding upon the parties thereto, plaintiff can not recover in this action,"

And found the issue for the defendant.

The plaintiffs excepted to this ruling, appealed, and assign the same for error, contending that under the statutes of Arkansas in force in the Indian Territory, as aforesaid, as construed by the Supreme Court of said State, and as shown by said statute and the decisions of said court given in evidence on the trial, the court ought to have held that the defendant's two chattel mortgages were void and conveyed no title to defendants as against the plaintiff's chattel mortgage, and should have accordingly rendered judgment in their favor for said sum of $15,232.60.

The Arkansas statute, directly in question and read in evidence by the plaintiffs, is as follows:

"Section 4742.—All mortgages, whether for real or personal estate, shall be proved or acknowledged in the same manner that deeds for the conveyance of real estate are now required by law to be proved or acknowledged, and when so proved or acknowledged, shall be recorded—if for lands, in the county or counties in which the lands lie, and if for personal property, in the county in which the mortgagor resides." [Revised Statutes, Arkansas, chap. 101, sec. 1, as amended by act March 1, 1877.]

"Section 4743.—Every mortgage, whether for real or personal property, shall be a lien on the mortgaged property from the time the same is filed in the recorder's office for record, and not before; which filing shall be notice to all persons of the existence of such mortgage." [Mansfield's Digest, 1884, chap. 110, pp. 935 and 936.]

The decisions of the Supreme Court of that State offered in evidence by the plaintiffs are the following: [Dodd v. Parker, 40 Ark. 536; Main v. Alexander, 9 Ark. 112 (4 English); Hannah v. Carrington, 18 Ark. 105; Jacoway v. Gault, 20 Ark. 190; Carnall v. Duvall, 22 Ark. 136; Haskill v. Sevier, 25 Ark. 158; Conner v. Abbott, 35 Ark.

365; Martin v. Ogden, 41 Ark. 186, 191; Challis v. German National Bank, 56 Ark. 88.]

Counsel for plaintiffs, to support their contention rely upon the construction of this statute by the Supreme Court of Arkansas in the foregoing decisions as manifested by the following extracts therefrom partially set out in their brief:

In the case of Main v. Alexander, 9 Ark. 112, the syllabus is as follows: "A mortgage is good between the parties, though not acknowledged and recorded, but under our registry act it constitutes no lien upon the mortgaged property as against strangers, unless it is acknowledged and recorded as required by the act, even though they may have actual notice of its existence. The registry of a mortgage without acknowledgment does not constitute such constructive notice to the world as contemplated by the act. A mortgage was executed upon a slave, and recorded without acknowledgment; afterwards the slave was attached by creditors of the mortgagor. On a bill to foreclose against the mortgagor and attaching creditors, held that the lien of the attachments was paramount to the mortgage."

In the case of Carnall v. Duvall, 22 Ark. 141-142, the court used the following language: "Carnall certainly had notice of the mortgage, being the act and deed of Johnson; for before his purchase, before the rendition of the judgments on which the executions under which he bought were issued, he saw the power of attorney from Johnson to Grimes, and that it was acknowledged. But actual notice of a mortgage is construed not to be binding notice. Nothing but its being filed for record before the purchase will make the purchaser subject to the mortgage. [Main v. Alexander, 4 Eng. 117; Hannah v. Carrington, 18 Ark. 105; Jacoway v. Gault, 20 Ark. 105.]"

In the case of Haskill v. Sevier, 25 Ark. 152, 158, the court adjudged that: "A mortgage which has not been ac-

knowledged as prescribed by the statute, though irregularly recorded, creates no lien on the mortgaged property, as against creditors and subsequent purchasers."

In that case the court in its opinion used the following language: "The next question to be considered is, did Smith acquire by his mortgage a lien upon the real estate of Jordan therein described? The deed is under the usual form, written by Jordan, signed by him with his proper signature, and delivered by him to the clerk and recorder of the proper county, to be recorded, and was recorded, and subsequently found in the possession of Smith. These facts, in the absence of evidence to the contrary, are sufficient evidence of a delivery of the deed. [Carnall v. Duvall, 22 Ark. 136; Miller v. Physick, 24 Ark. 244.] But as the deed was not acknowledged it was irregularly put upon record. Section 1, chapter 117, Digest, page 799, provides that mortgages shall be acknowledged before some person authorized by law to take the acknowledgment of deeds, and , if for land, shall be recorded in the county or counties in which the lands lie. The second section provides that every mortgage, whether for real or personal property, shall be a *lien* upon the mortgaged property from the time the same is filed in the recorder's office for record, and not before, which filing shall be notice to all persons of the existence of such mortgage. As a prerequisite to the admission of the mortgage to record, it should have been acknowledged before some competent officer, and as this appears not to have been, it created no valid lien upon the mortgaged property as against creditors and subsequent purchasers, no matter whether they had actual notice of such prior mortgage or not. [Main v. Alexander, 9 Ark. 112; Blagg v. Hunter, 15 Ark. 246; Jacoway v. Gault & Loupe, 20 Ark. 190.] But as between the parties themselves, whether recorded or not, it was a valid instrument. Thus, in Main v. Alexander, it was said 'that although the mortgage was not acknowledged by the

party who made it, yet it was a matter of which he could never take advantage; and that, as between the parties themselves, the lien became fixed and complete by the mere execution and delivery of the instrument." ...... Holding the mortgage, although not regularly recorded, to be valid, as between Jordan and Smith, its effect in equity was to furnish a security for the payment of the debt due from Jordan to Smith (Kennedy v. McCown, 18 Ark. 170); and after a breach of the conditions of the mortgage; by nonpayment of the debt, it became a legal title, so as to enable him to oust the mortgagor by an action of ejectment. [McLean v. Cassidy, 18 Ark. 34; Gilchrist v. Patterson, Id. 579.]"

In the case of Dodd v. Parker, 40 Ark. 536-539, the court adjudged that: "An unregistered mortgage, or one which has been recorded without being properly acknowledged, is no lien on the mortgaged property as against a stranger, though he have actual knowledge of its existence."

In its opinion in that case the court used the following language: "We do not stop to consider whether a mortgage of a married woman's land, acknowledged by her to have been executed for the purpose of relinquishing her dower, is effectual to carry any estate whatever, because this mortgage was never acknowledged at all. Nor need we discuss the question whether a mortgage, signed by a married woman but never acknowledged, is good between the original parties; for here the rights of a third party have intervened. Our statute of mortgages (Gantt's Digest, sec. 4288) is peculiar. It provides that every mortgage shall be a lien on the mortgaged property from the time it was filed for record, and not before, which filing shall be notice to all persons of the existence of the mortgage. And it can not be legally filed for record until it has been properly acknowledged. Hence it has been uniformly held in this State that an unregistered mortgage, or one which has been improperly admitted to registration, con-

stitutes no lien upon the mortgaged property, as against a stranger, notwithstanding he may have actual knowledge of its existence. [Main v. Alexander, 9 Ark. 112; Hannah v. Carrington, 18 Id. 105; Jacoway v. Gault, 20 Id. 190; Carnall v. Duvall, 22 Id. 136; Little v. Dodge, 32 Id. 453; Martin v. O'Brannon, 35 Id. 67; Conner v. Abbott, 35 Id. 365.]"

In the case of Martin v. Ogden, 41 Ark. 191, the court used the following language: "It is no longer open to question in this State, that a mortgage of real property, unaffected with fraud, but unrecorded, creates a valid lien, remaining after the death of the mortgagor, against administrators, heirs, devisees and general creditors, and there is no reason why the same doctrine should not apply to personalty. See Haskill, Admr., v. Sevier, Admr., et al., 25 Ark. 156. And this applies whether the debts of the creditors were in existence when the mortgage was made, or were created subsequently, upon the faith of the property, without notice of the mortgage, and regardless of the merits of the creditor's claim. Upon the other hand it is as much closed from question that an unrecorded mortgage, however honestly made, is wholly invalid against attaching creditors, or persons obtaining a specific lien, or even subsequent purchasers who take with the full knowledge that they are defeating another's lien, and who intended to do so. See 9 Ark. 112; 20 Ark. 190; 18 Ark. 105; 33 Id. 203; 37 Id. 94. These rules have now become so fixed that it would be unwise in this court to attempt their change or modification. Whatever in them there may be incongruous or shocking to a sense of equity, has resulted from efforts to effect legislative intention, and it devolves upon the legislature to bring our equity jurisprudence in harmony with the moral sense of the most civilized peoples."

The opinion of the court in the case of Challis v. German

National Bank, 56 Ark. 88, is as follows: "George Lamberson, being indebted to the German National Bank in the sum of $2,500 for money loaned, executed a deed to a trustee on the first day of February, 1889, whereby he mortgaged seventeen yoke of oxen and other personal property to secure the payment of the debt of $2,500, and all other indebtedness which should be contracted by him with the bank on or before the first of January, 1890. This mortgage was duly acknowledged and recorded within sixteen days after its execution. His indebtedness to the bank having increased to the sum of $9,554.48, he executed a second deed, on the 6th of December, 1889, and thereby mortgaged the property mentioned in the first deed and a saw mill plant, known as 'Lamberson's Mill,' and all tram cars, tram tracks and personal property used in connection with the mill, to secure the payment of this indebtedness, which included the indebtedness mentioned in the first mortgage. The second deed was filed for record on the day following its execution, and was recorded, but was never acknowledged, or proved by witnesses. To foreclose these mortgages this action was brought by the bank against Lamberson, W. L. Challis and others. Plaintiff alleged that Lamberson, on the first day of February, 1890, sold and transferred to Challis the property which was mortgaged to secure the bank, subject to the mortgages, and with the understanding that they were valid liens on the property described therein, and that the indebtedness secured thereby should be paid before Challis could acquire a good title to the property. But Challis, in his answer, denied this, and alleged that Lamberson sold the property to him unconditionally, ·on the twenty-seventh of December, 1890, for the consideration of $6,000; and that the first mortgage was satisfied and cancelled by the execution of the second in lieu thereof. Upon the hearing evidence was adduced in behalf of both parties, in consideration of which the court sustained the allegations of

Young v. Evans-Snyder-Buel Com. Co.

plaintiff's complaint, rendered judgment in its favor against Lamberson for the amount of his indebtedness to the bank, and decreed that the mortgages be foreclosed; and defendants appealed. Under the laws of this State a mortgage is no lien on the property described in it as against any one, except the parties to it, unless it be acknowledged or proved and filed with the recorder. The second mortgage was neither acknowledged nor proved. To avoid the effect of such failure it is alleged and insisted that Challis purchased subject to it. The burden of proving this allegation rested upon the bank. To do this it adduced the testimony of Lamberson, who testified that, in selling to Challis, he took into consideration the fact that the bank held the second mortgage; that it was not his intention in selling to defeat it or in any way to affect its collection; and that, in selling to Challis, he only transferred all the right and title he had in the property. But he explained this by saying that he believed that the second mortgage was a valid lien on the property therein described, and that Challis would pay it in order to protect his interest in the property, and that Challis took the property subject only to such claims as he should find were valid liens upon it as against him when it came into his hands as a purchaser. It does not appear that there was any understanding that he only purchased the equity of redemption, or that he would take any less interest than the law permitted him to acquire. If the mortgage was considered of any importance in the sale, it was because it was already a valid lien upon the property as against everyone, and not because the parties to the sale intended to make it a lien as to Challis. The most reasonable conclusion is, Challis intended to acquire all the interest in the property purchased that the law permitted, and to recognize no lien which was not, independently of his own contract, a legal and valid lien against him. This conclusion is strengthened by the fact that,

in taking a deed to the lands on which the mill and tram way were located, a covenant to warrant the title to Challis against all persons claiming under Lamberson was incorporated therein. We think that the parties imposed no limitations upon the interest in the property acquired by the purchase of Challis, except those imposed by law; and the law imposed none by virtue of the second mortgage. The first mortgage still remains in force, unless it has been satisfied or cancelled. The execution of the second mortgage did not operate as a satisfaction or discharge of the first, unless it was so intended or agreed by the parties. The burden of proving that it was, rested on Challis. The evidence upon this point is not satisfactory. No witness testified positively that there was such an agreement. Suttler, who took the mortgage for the bank, testified: 'It was not my intention to release or satisfy any claim which the bank might have against Mr. Lamberson. I was simply trying to put the security in a little better shape.' And Lamberson, who executed it, testified: 'I don't know that there was much said about it. I supposed, of course, that when the new mortgage was put on record it would satisfy the old one, the same as the new notes satisfied the old ones.' The fact is, it was an incomplete mortgage. Lamberson agreed to acknowledge it and never did. So if there was any agreement in regard to it, it never was carried into execution; and the fairest and most reasonable inference is, the first mortgage was never satisfied or discharged. [Akin v. Peters, 45 Ark. 313; Caldwell v. Hall, 49 Ark. 512.]"

Although the evidence in the case in hand tended to prove, and the court might well have found that the consideration of the defendant's two chattel mortgages of the eleventh of November, 1895, was money that day actually advanced to Skinner in good faith upon these cattle, by defendant and its assignor, for their purchase and preparation for market; that when thereafter, the plaintiffs accepted their chattel

mortgage of February 11, 1896, they had actual notice of the existence of the defendant's mortgages, and of the indebtedness they were given to secure; that the only consideration for this third mortgage was the past due indebtedness of Skinner to the plaintiff banks incurred before any of these mortgages were executed, and was neither released, extended nor discharged by plaintiffs' mortgage, and although upon these facts a different conclusion might be reached by the courts of this and other States under the recording acts of those States, yet it must be conceded, that, if this were all of the defendant's case, the plaintiffs' contention under these decisions of the Supreme Court of Arkansas might be maintained. But this was not by any means all of the defendant's case, nor, while these facts contributed to its proof, did they constitute the ultimate fact upon which the circuit court predicated its ruling—which was, the acceptance by the plaintiff of its mortgage subject to the specific lien of defendant's two mortgages upon the cattle, valid between the parties thereto; and manifested by the granting clause of plaintiff's mortgage when read in the light of the foregoing facts, and other evidence on the trial; the language of which is as follows, to-wit:   "Also 879 head of steer cattle, three years old and up, branded S on right side, known as Pierce cattle, subject to a lien of $22 per head."

There was ample evidence tending to prove and to warrant the court in finding that the equitable lien aforesaid, of defendant's two mortgages, the principal of which amounted to the sum of $22 per head on the Pierce cattle, was the lien intended by the clause aforesaid and was so understood by Young when he accepted the same for his co-plaintiffs.

This agreement of plaintiffs substantially recited in their mortgage to take their security subject to the defendant's prior mortgages, which were an equitable lien upon the cattle, valid between the parties thereto, obviously takes the

defendant's case upon this issue out of the principle of the Arkansas cases aforesaid, upon which plaintiffs rely, and brings it within the well-settled doctrine recognized and enforced in that as well as in the other states of the Union, that: "One who takes a conveyance absolute or conditional which recites that it is second or subordinate to some other lien or incumbrance, can in no proper sense claim that he is a purchaser of the entire thing. He purchases only the surplus or residuum after satisfying the other incumbrance;" and, "A mortgage expressly providing that it shall be subject to a prior mortgage is subject to it independently of the fact that the prior mortgage is not of record; nor will it alter matters to record the subsequent mortgage first." [Jones on Chattel Mortgages, sec. 494; 5 Am. and Eng. Ency. of Law (2 Ed.), 1015; 2 Cobbey on Chat. Mortgages, sec. 1039; Clapp v. Halliday, 48 Ark. 258.]

The plaintiffs by accepting their subsequent mortgage under the circumstances aforesaid ceased to be strangers to the defendant's prior mortgages, were thereby brought into contractual relations with said mortgages, and imposed limitations upon the interest acquired by them, in the property to the extent of defendant's equitable lien, under said prior mortgages, subject to which they agreed to take. There is nothing in the statutes of Arkansas, nor in the rulings of the Supreme Court of that State thereupon, prohibiting the making or impugning the validity of such a contract. As was well said by the learned circuit judge on the trial: "Just one view of this case has occurred to me all the way through here, that the parties Mr. Young represents got what they bargained for. They didn't bargain to get all these cattle, but they bargained to take them, subject to a lien of twenty-two dollars a head on a certain amount, and eleven or twelve thousand dollars on another loan and having agreed to take the property subject to these liens, they got just what they bar-

gained for." And it is not believed that under the law of Arkansas or any other State, the plaintiffs ought to have more.

The judgment of the circuit court is therefore affirmed. All concur.