HUNT et al. v. LYNDONVILLE SAV. BANK & TRUST CO. et al.

No. 11241.

Circuit Court of Appeals, Eighth Circuit.

April 25, 1939.

G. R. Smith and J. F. Loughborough, both of Little Rock, Ark. (W. A. Leach and M. F. Elms, both of Stuttgart, Ark., on the brief), for appellants.

Henry M. Armistead, Sr., of Little Rock, Ark. (W. Raymond Roddy, of Little Rock, Ark., on the brief), for appellees.

Before GARDNER and WOODROUGH, Circuit Judges, and OTIS, District Judge.

GARDNER, Circuit Judge.

Appellees brought two suits to foreclose two mortgages given on separate parcels of land. The suits were consolidated. Decree of foreclosure was entered in favor of appellees and appellants prosecute this appeal. It will be convenient to refer to the parties as they appeared below. Defendants pleaded the Arkansas Statute of Limitations. Plaintiffs filed amendments to their bills of complaint, alleging that defendant Harry Hunt, the principal debtor, had, while the indebtedness was in full force and effect and within a period of five years after the dates of the last payments made by him on the loans, and within five years next prior to the commencement of the suits of foreclosure, acknowledged the validity of the obligations in writing so as to imply a promise to pay, and that by reason of such acknowledgment he was now precluded from pleading the statute of limitations.

It appears from the evidence and was found by the court that on the 14th of May, 1924, defendant Harry Hunt procured a loan of $10,000 from the New England Securities Company and executed a deed of trust as security conveying 320 acres of land, and on the 9th of December, 1924, he secured another loan from the same company in the sum of $20,000 and executed a deed of trust conveying 640 acres of land as security. Both of these loans prior to their maturity were assigned and transferred to the plaintiff Lyndonville Savings Bank and Trust Company.

The $10,000 loan by its terms became due December 1, 1929, and the $20,000 loan became due April 1, 1930. Defendant made his last payment of interest on the $10,000 loan July 2, 1931, and on the $20,000 loan April 6, 1931. No payments were made on the principal of either loan. Suits for foreclosure were filed January 7, 1937.

On the 10th of July, 1933, Hunt conveyed all of the land covered by both mortgages to his daughter, Genevieve Hunt, also named as defendant, and on the same date his daughter reconveyed the property to him. Each of these deeds described the indebtedness involved in the foreclosures and the land was conveyed expressly subject to the deeds of trust. The conveyance from Hunt to his daughter was recorded February 7, 1935, and plaintiffs' representative learned of its provisions shortly thereafter. The deed from Genevieve Hunt to her father, Harry Hunt, although actually delivered, was never recorded.

Following the default in the interest payments on these loans, and particularly after the loans became due, there was considerable correspondence between Hunt and plaintiffs' representative with reference to securing a loan from the Federal Land Bank, and efforts to secure such loan having failed there were frequent conferences between Hunt and plaintiffs' representative and numerous letters passed between them.

The lower court found that there had been a written acknowledgment of the debts within five years before the institution of the suits, and that defendants were estopped to plead the statute of limitations.

It is contended by appellants that (1) the deeds executed by Hunt to his daughter and by her to him, subject to the deeds of trust in question, were not sufficient acknowledgments of the debts; (2) that no written acknowledgment of the debts was made in the letters passing between Hunt and plaintiffs' representative; (3) that defendants are not estopped to plead the statute of limitations. There are other contentions which, in our view of the case, are not material.

Section 9465 of Pope's Digest of the Statutes of Arkansas provides in part as follows: "In suits to foreclose or enforce mortgages, deeds of trust or Vendor liens, it shall be sufficient defense that they have not been brought within the period of

limitation prescribed by law for a suit on the debt or liability for the security of which they were given."

Section 8933 provides: "Actions on promissory notes, and other instruments in writing, not under seal, shall be commenced within five years after the cause of action shall accrue, and not afterward."

Section 8943 provides: "No verbal promise or acknowledgment shall be deemed sufficient evidence in any action founded on contract whereby to take any case out of the operation of this act, or to deprive the party of the benefits thereof."

In considering whether there has been a sufficient acknowledgment in writing to toll the statute of limitations, the question to be determined is the intention of the debtor. It is generally held to be sufficient if, by fair construction, the writing constitutes an admission that the claim is a subsisting debt unaccompanied by any circumstances repelling the presumption of the party's willingness or intention to pay. Morris v. Carr, 77 Ark. 228, 91 S.W. 187; Conway v. Reyburn, 22 Ark. 290.

We shall first consider the effect of the conveyance of the mortgaged property by Hunt to his daughter and by her to him. Each of these conveyances contained a description of the mortgages or deeds of trust and a recital that they were subject to such encumbrances. The reference to these mortgages or deeds of trust contained in the conveyances passing between Hunt and his daughter in effect made those mortgages or deeds of trust a part of these conveyances. There was at that time apparently no thought in the mind of either the grantor or the grantee of these deeds to question the validity of the obligations secured by the mortgages. When Hunt accepted from his daughter the conveyance with its recital of the existing mortgages and that the conveyance was subject to the obligations secured thereby he adopted that instrument and its recitals as his own, and he thereby acknowledged that he owed these obligations to plaintiff. Even if he had been a stranger to plaintiffs' mortgages, he was by this transaction brought into contractual relations with the plaintiffs by which he in effect agreed with plaintiffs to accept the property subject to plaintiffs' mortgages. Gunnels v. Farmers' Bank of Emerson, 184 Ark. 149, 40 S.W.2d 989; Haney v. Holt, 179 Ark. 403, 16 S.W.2d 463; Parker v. Carter, 91 Ark. 162,

120 S.W. 836, 134 Am.St.Rep. 60; Planters Nat. Bank of Mena v. Townsend, Ark., 123 S.W.2d 527. This estopped Hunt from denying the validity of the mortgages and arrested the running of the statute of limitations, and the suits to foreclose were instituted within five years from that date.

In Gunnels v. Farmers' Bank of Emerson, supra, the Supreme Court of Arkansas had before it a case which involved the foreclosure of a mortgage which recited that it was a "second mortgage on" the lands described. In the course of the opinion the court quotes with approval from Young v. Evans-Snyder-Buel Comm. Co., 158 Mo. 395, 59 S.W. 113, as follows [184 Ark. 149, 40 S.W.2d 990]: " 'The plaintiffs, by accepting their subsequent mortgage under the circumstances aforesaid, ceased to be strangers to the defendant's prior mortgages, and were thereby brought into contractual relations with said mortgages, and they imposed limitations upon the interest acquired by them in the property, to the extent of defendant's equitable lien under said prior mortgages, subject to which they agreed to take. There is nothing in the statutes of Arkansas or in the rulings of the Supreme Court of that state thereupon prohibiting the making or impugning the validity of such a contract.' "

The court then says: "The bank's deed of trust was taken May 20, 1920, and would not have been barred until five years after its maturity, and the deed of trust to Gunnels was executed March 2, 1923, so that Gunnels contracted with reference to a valid subsisting lien securing a debt not barred by any statute of limitations, and if, by agreeing, in the deed of trust to him, that that instrument should be second to the one held by the bank, Gunnels assumed a contractual relation with reference to the bank's deed of trust and ceased to be a stranger thereto, then he is in no position to say that the bank's deed of trust was barred."

By analogy, it may be said that when Hunt accepted the deed from his daughter, reciting that it was subject to these mortgages, he assumed a contractual relation with reference to plaintiffs' mortgages, and whether it is held that this is a direct acknowledgment to his creditor, or that he was thereby estopped to question the validity of the bank's mortgages, the result would be to arrest the running of the statute of limitations.

In a still later case, Planters Nat. Bank of Mena v. Townsend, supra, the Supreme Court of Arkansas has reaffirmed the doctrine of the Gunnels case. In the Planters National Bank case, the mortgage sought to be foreclosed contained recital that it was inferior to a vendor's lien securing an indebtedness of $2,000. At the time of the taking of this mortgage, the right of action on the lien was in fact barred, but the Supreme Court of Arkansas said that, "One may toll the statute of limitations by a written recognition of the debt either before or after the statutory bar" [123 S.W. 2d 535]. The court held that the provision in the mortgage was a written recognition or acknowledgment by the mortgagor that he owed $2,000, which was secured by a vendor's lien upon the property and that a consideration for giving the mortgage was that it should be inferior to the vendor's lien. In the course of the opinion which reviews a number of earlier Arkansas cases, the court said: "The clause in the mortgage was a written acknowledgment on the part of Harrison Thompson that he owed the debt and it was a written contract and agreement on the part of the bank that the $2,000 and interest should be paid before the bank was paid the amount expressed in its mortgage. Our conclusion based upon the written statement in the bank's mortgage that its mortgage was inferior to the vendor's lien of appellees, and that appellees vendor's lien was prior to that of the bank clearly estopped the bank from pleading the statute of limitations even as a general creditor of the estate of Harrison Thompson, deceased, or under the theory that it, the bank, was a third party of a stranger to the contract."

See, also, Moore v. Clark, 40 N.J.Eq. 152; Great Western Mfg. Co. v. Elledge, 68 Colo. 594, 192 P. 498.

We are of the view that the acceptance of the deed by Hunt tolled the statute of limitations and that the suits to foreclose were instituted within the statutory period.

 The lower court was also of the view that in his correspondence with plaintiffs' representative relative to these loans, Hunt acknowledged their validity as subsisting obligations. Each of these loans bore a number which was written on the face of the notes prior to their execution by Hunt, and in the correspondence between the parties they are referred to by these numbers. Not only did plaintiffs' representative use these numbers in the correspondence, but Hunt also used them so that the loans were definitely identified, and they were the subject of the correspondence between the parties. All of the correspondence on this subject should be taken into consideration in determining whether Hunt acknowledged the validity of the debt. It is conceded that it is not necessary that there should have been a direct promise to pay the debt, but it is sufficient if there was an acknowledgment of its present validity. In such circumstances, a promise to pay is inferred.

It would unduly extend this opinion to set out the entire correspondence. The earlier course of correspondence referred to efforts of Hunt to secure a new loan for the purpose of paying off these loans, in which efforts plaintiffs' representative was cooperating and giving such assistance as he could. These negotiations having failed, the correspondence continued with reference to these loans. Thus, on March 4, 1932, Gibson, plaintiffs' representative wrote Hunt, captioning the letter "D-16571-Hunt" (the number of the $20,000 loan), as follows: "This is to respectfully call your attention to the fact that on April 1st this loan will be two years past due, with interest and principal owing and we would appreciate your writing or coming to see us as to what you will be able to do regarding this loan at that time."

On March 7, 1932, Gibson wrote Hunt, captioning his letter F-16259-Hunt (the number of the $10,000 loan), as follows:

"It has been some time since we have heard from you—and though we're not afraid of losing anything on your account, at the same time the investor is writing us as to the reason why this is not being put into shape, since December interest has not been paid, nor any advices as to possible reduction in the principal made.

"Suppose you have not sold your rice, as yet, but would appreciate advices from you as to when you plan to do so—and in what manner you are planning to take care of this loan, as well as the other loan D-16571-Hunt that we have for you."

It is important to observe that each of these loans is definitely identified in these two letters.

On March 10, 1932, Hunt replied to Gibson. His letter bears but one loan number, F-16259, but is in reply to Gib-

son's letters of March 4 and 7. This letter contains the following:

"Replying to yours of the 4 and 7 inst. would beg to state I am planning to be in Little Rock some day next week, at which time I shall call upon you and feel we can have a more complete understanding if we can sit down and talk face to face. * * *

"Now, Cecil, when I come over I shall try and lay my cards on the table. Want you to do the same and we must devise a plan that is workable, that will be satisfactory to all parties concerned. Be honest to one the other and from there we shall go. I feel I am at your peoples mercy, and I want to do what is the best for them." ·

It is here to be observed that this letter replied to both of Gibson's letters, and referred, therefore, to both of the loans. Unless the obligations were valid ones, Hunt would not have thought himself "at your people's mercy," and when he expresses the desire to do what is best for them, he not only does not question the validity of the debt but in effect expresses a desire to do the best he can toward paying it.

On May 6, 1932, Gibson wrote Hunt, using both loan captions, and in his letter he asked Hunt to pay the 1931 taxes on the two mortgaged farms. On May 10, 1932, Hunt replied, using both loan numbers in the caption of his letter, and in this letter, among other things, he said:

"Should I draw on my last resources to pay taxes. Then I knew I could never get the oils to water this crop. Then I would meet defeat for myself as well as for you people. If we must let the lands sell, we can redeem. Don't like to do this yet. I see no alternate.

"I feel it my duty to tell you. If conditions do not get better I can not hold out much longer. I realize this to be a fact. However, I want you to know I propose to go to the last ditch. That is all I can do."

Here, again, Hunt recognized these debts as binding obligations, suggesting that failure to get water on his crop would result in defeat for himself "as well as for you people." He says that, "I propose to go to the last ditch," indicating a willingness to pay and an acknowledgment of the debts.

On March 24, 1932, Gibson wrote to Hunt, using both loan numbers in the caption of his letter, saying, among other things:

"Immediately after you were in our office, and went into detail as to your financial inability to take care of items owing on captioned loans with our Mr. C. A. Gibson, we wrote the investor and quoted verbatim the situation that you were in, and made recommendations that you be allowed to continue.

"Today we have received a very nice letter from the investor who stated despite the fact that non-payment of interest would cramp them considerably, in view of your excellent record as an interest payer, and the splendid way in which you had always met your obligations in the past that they would certainly be prone to let you continue and work this out—feeling that you would exert an unusual effort to work things out to better advantage for all concerned this coming year."

In reply to this letter, Hunt wrote to Gibson, saying: "Replying to your letter of the 24th inst., beg to state my memory serves me that when I was in your office talking to your Mr. Cecil Gibson, I advised him that at the price of rice at that time I would not be able to pay the mortgage at the bank (this refers to another mortgage). Therefore I could not pay the interest nor the taxes on the farms this year. * * *"

The statement in this letter that, "I could not pay the interest nor the taxes on the farms this year," referred to the mortgaged lands. The interest on the farms was the interest on these loans. This was an acknowledgment of the indebtedness secured by the mortgages. In none of this correspondence is there any intimation that Hunt questions the validity of the indebtedness or that he does not intend to pay it, and, taken together, we think is a definite acknowledgment of the validity of the debts.

The decree appealed from is therefore affirmed.