AMERICAN CLAY MACHINERY COMPANY, Respondent, v. THE SEDALIA BRICK & TILE COMPANY, Appellant.

Kansas City Court of Appeals, November 17, 1913.

1. REPLEVIN: Personal Property Affixed to Realty: Agreement That It Shall Remain Personal Property Until Paid for. In a written contract creating a conditional sale of machinery executed by the vendor and the owner of land before the machinery was affixed to the realty, it was expressly stipulated that the machinery should remain personal property until paid for and should not become real estate by reason of being in any manner affixed to the real estate, and that vendor should have the right to remove same if not paid for, it was held that, as between the parties to such contract and subsequent purchasers with notice thereof, or whose rights are expressly subject to such agreement, effect will be given to such agreement and the machinery will remain personal property and be removable by the vendor if not paid for, in the absence of a statute forbidding such agreements. And replevin will lie for such machinery after default in the payment of the purchase price or deferred payments.

2. ————: ————: ————. Where, in a written contract made in reference to personal property before it is attached to real estate, it is expressly stipulated that it shall remain personal

property and shall not be considered real estate by reason of being attached to land in any manner, such stipulation will be given effect and there is no limitation upon the right of the parties to make such an agreement, as between themselves and subsequent purchasers with notice, unless the property is, in its essential nature, such that it loses its identity by being incorporated into the realty and its removal would result in its destruction.

3. **PLEADING: Petition: Amendments.** Although a petition states no cause of action, yet if defendant does not demur but answers thereto as if it did state a cause, this saves the petition from being considered such a nonentity as to be incapable of being amended. And if plaintiff obtains leave to, and does, file an amended petition, defendant, by filing answer thereto and going to trial thereon, waives any error, if any, in permitting an amendment.

4. ——: ——. Unnecessary allegations in a petition may be treated as surplusage if they do not change, narrow, contradict or limit the issues upon which recovery is sought.

5. **CONDITIONAL SALES: Recording: Subsequent Purchasers with Notice.** A contract which is a conditional sale and not a chattel mortgage does not have to be recorded in order to be valid as to subsequent purchasers with actual notice.

Appeal from Pettis Circuit Court.—*Hon. H. B. Shain,* Judge.

AFFIRMED.

*G. W. Barnett* for appellant.

*Brown, Cell & Myers* for respondent.

TRIMBLE, J.—This is an action of replevin brought by the American Clay Machinery Company to recover possession of certain machinery used in the grinding and drying of clay and thereafter in manufacturing it into brick and other clay products. The machinery in question was sold to the Sedalia Clay Manufacturing Company by written contracts. In each there was a clause providing that said machinery was to remain the property of plaintiff until paid for in

full, and that its installation in any building should in no sense be construed as making it real estate, or as causing it to form part of the building, while any deferred payments remained unpaid, and that it should retain its personal character, and not become a fixture by being placed in any building or in any manner annexed to any land, and might be taken and removed upon default in making the deferred payments.

The purchaser owned a tract of land adapted to the manufacture of brick and other clay products, and the machinery so purchased was placed thereon for use in such manufacture. The machinery, or at least a certain part of it, was very large and heavy requiring it to be attached very solidly and firmly to the real estate, being set on solid concrete foundations several feet in the ground, and attached to the building by iron beams embedded in the walls, and there were a number of underground trenches or tunnels, lined and covered with concrete, leading from the outside under the walls of the building to the machinery. In fact, it was necessary to first set the machinery in place and then erect the building around it, as the machinery was too large to be taken through doors or windows. The machinery was set up by the purchaser according to specifications furnished by the seller. So that, without going extensively into the evidence, it may be safely said the machinery was very firmly attached to the real estate and could not be taken away without opening a hole in the wall of the building in which it was housed and breaking up, with heavy sledge hammers, the concrete on which the machinery was set and to which it was fastened.

After the machinery was purchased and had been thus installed, the purchaser executed a deed of trust upon all its plant and ground, in which was included the machinery so purchased from the plaintiff company. But said machinery was conveyed "subject to

the encumbrance due said company.'' This deed was afterwards foreclosed, and the property was bought in at foreclosure sale by H. K. Bente who was president of the Sedalia Clay Manufacturing Company, the corporation that purchased said machinery from plaintiff. The trustee's deed, in conveying the plant to Bente, also conveyed the machinery in question subject to the encumbrance thereon due the plaintiff company.

Bente ran the plant awhile and then organized the defendant corporation, of which he is, or was, the president, and to which he deeded the plant; and in this deed the machinery in question was again conveyed subject to the encumbrance due the plaintiff company.

The deferred payments not being paid, either by the original purchaser of the machinery or by Bente or the present corporation defendant, demand was repeatedly made therefor, and, failing to obtain payment, plaintiff instituted this replevin suit and took possession of the machinery. In doing so, it was doubtless necessary to break up the concrete in which the supports of the machinery were embedded, and an opening had to be made in the walls of the building inclosing it, which was afterwards closed up by plaintiff, and the irons by which the machinery was attached to the walls were cut off by means of the cold chisel.

At the close of the testimony each side prayed the court to give the jury a peremptory instruction to find in its favor. The court granted the peremptory instruction prayed by plaintiff, and the jury returned a verdict awarding the property to plaintiff with one cent damages. Defendant appealed.

It is urged that the appeal must be dismissed for the reason that the record does not show that an affidavit for appeal was filed and that an order was made allowing the appeal. Since January 6, 1913, our rule 26 has provided that an appellant need not abstract

the record entries showing the steps taken below to perfect an appeal, but that, if the abstract states that the appeal was duly taken, then, in the absence of a record showing to the contrary, it will be presumed the proper steps were taken at the proper time and term. The abstract in this case does not use the expression "the appeal was duly taken" but it does contain the legal equivalent of that statement and is, therefore, sufficient to bring the abstract within the spirit and purpose of the aforesaid rule which is to simplify, as far as lies within the court's unaided power, the process of perfecting an appeal. It is suggested, however, that the statement "the appeal was duly taken" in the exact words of the rule is much more compact and comprehensive than any other which can be used to express that fact. In using the above concise phrase, appellants will run no risk of having their abstracts held insufficient, and the appellate court will not be required to pass on the sufficiency of such abstracts in this respect.

The original petition and also the first amended petition contained no description of the property sought to be replevied, but alleged it was certain articles more fully "described in a certain invoice hereto attached, marked Exhibit 'A' and made a part hereof." An exhibit is no part of the petition even though it is attached thereto and the petition says it is a part of it. [Curray v. Lacky, 35 Mo. 389; Bohling v. McFarland, 38 Mo. 465; Robinson v. Levy, 217 Mo. 498, l. c. 510.] Consequently neither the petition nor the first amended petition described any property. Hence they were open to demurrer. The defendant, however, did not demur, but answered the second amended petition denying that plaintiff was "the owner of or entitled to the possession of the property mentioned in said petition." And after a jury was empaneled and the trial commenced, defendant objected

.to the introduction of any evidence. Thereupon plaintiff obtained leave to, and did, file a second amended petition over the objections and exceptions of defendant. The latter then refiled its answer to the second amended petition and went to trial. The point is made that neither the original nor first amended petition stated any cause of action at all, and hence they were not amendable. But, as defendant recognized the second amended petition as describing property and as stating a cause of action by filing an answer and going to trial thereon, this was a recognition of the fact that the petition described some property and stated some sort of a cause of action sufficient, at least, to permit an amendment. It has been held that, even in a case where the petition failed so utterly to state a cause of action as to be grounds for arresting a judgment obtained thereon, it could be aided by the filing of an answer. [Donaldson v. Butler Co., 98 Mo. 163; Dillard v. McClure, 64 Mo. App. 488, l. c. 491.] The first amended petition, therefore, could not be regarded as no petition at all, and, by answering to the second amended petition, defendant waived any error there may have been in allowing the last amendment. [Carter v. Baldwin, 107 Mo. App. 217.]

For the same reasons the first amended petition was not incapable of being amended because of the claim that it failed to state that defendant is in possession of the property, or that it unlawfully detains the same, or that plaintiff is the owner and entitled to the possession thereof. So far as the last two necessary allegations are concerned, the said petition does contain them, and as to the first two, it inferentially makes them by alleging facts from which they arise. We do not say that said petition was sufficient, but only that it was not such an absolute nonentity as to be incapable of amendment under the circumstances

hereinabove set out and in view of the liberality with which amendments should be allowed.

The objection to the sufficiency of the second amended petition, on which the case was tried, is likewise untenable. It does allege that the plaintiff is the owner of and entitled to the possession of the property. It was not necessary, perhaps, to set out a large part of what is stated in the petition. [First National Bank v. Ragsdale, 158 Mo. 668.] But the fact that it does state them, and then, in a separate and concluding paragraph, says "by reason of the premises considered" it is the owner of said machinery and materials and is lawfully entitled to the possession thereof, does not prevent such allegation from being an unqualified assertion of ownership and right to possession. The statement of facts contained in the petition did not destroy it, but such statement could be treated as surplusage unless the issues upon which recovery was had were broader or different from those limited and made specific by the facts alleged. [Kansas City, etc., Co. v. McDonald, 118 Mo. App. 471.] They did not narrow or limit the issues in this case. In fact it may have been well enough to allege, as it did, the agreement in the contracts of purchase that the machinery should remain personal property the title to which should stay in plaintiff till paid for, and that defendant took said property with full notice of such agreement.

The contracts by which the machinery was purchased were conditional sales and not chattel mortgages. [R. S. Mo. 1909, sec. 2889; Washburn v. Inter-Mountain Mining Co., 56 Ore. 578; 24 Ann. Cases, 357, and cases cited in note on page 361.] Not being chattel mortgages, they did not have to be recorded in order to be valid as to subsequent purchasers with actual notice of them. Such conditional sales are good as between the parties and subsequent purchasers hav-

ing notice thereof. [Sec. 2889, R. S. Mo. 1909; Gilbert Book Company v. Sheridan, 114 Mo. App. 332; Kingsland v. Drum, 80 Mo. 646; Oyler v. Renfro, 86 Mo. App. 321, l. c. 325; Young v. Evans-Snyder-Buell Com. Co., 158 Mo. 395, l. c. 410.]

To reach a correct conclusion in this case, we must bear constantly in mind three things. First, the sales of the machinery to the original purchaser were conditional sales. Second, the defendant herein is a subsequent purchaser *with actual notice of the agreement that the machinery should remain personal property and be removed if it was not paid for.* In fact, by obtaining the machinery "subject to" plaintiff's rights defendant took it *in recognition of,* and not in opposition to, the condition in the selling contracts. [Young v. Evans, supra; Mead v. Maberry, 62 Mo. App. 557.] Third, that the agreement between the buyer and seller that the machinery sold, by reason of its installation in any building, "should in no sense be construed as real estate, or as forming part of the building while any deferred payments remained unpaid and that it should retain its personal character, and not become a fixture by being placed in any building or in any manner annexed to any land, and may be taken and removed, if not paid for" is a positive and emphatic declaration, as strong as language can make it, that said property shall *remain personal property and be removable.*

It is not necessary, therefore, to consider the facts and circumstances attending the sale, or the manner of attaching the property to the realty, or the results flowing from its removal therefrom, in order to get at the intention of the parties. That intention is clearly, emphatically and unmistakably expressed in this case. The machinery was to remain personal property and be removable until paid for. In determining whether or not machinery attached to realty remained personal

property or became realty, the intention of the owner
is the *best test,* and if that is not expressly stated, the
adaptability of the machinery to the uses and purposes
to be subserved is the next best test.   [Prog. Brick
Co. v. Gratiot Brick Co., 151 Mo. 501.]    In other
words, it is for the purpose of arriving at the intention
of the owner, that any of the circumstances are looked
to for the purpose of determining whether or not ma-
chinery becomes a part of the realty.   But, if the in-
tention of the owner is the best test, and that inten-
tion is explicitly stated, what need is there of looking
at the surrounding circumstances?   Now, inasmuch as
the defendant had actual notice of this and took the
property subject to that express agreement, the case
before us is precisely as if it were between the plain-
tiff and the original purchaser.   This being so, what
is to prevent the machinery from remaining personalty
even though it is firmly fixed to the real estate and
even though its removal may do some injury to the
real estate?   Even if this is the case, the party owning
the real estate agreed to it in writing.   There is no
statute forbidding such an agreement, and, in the ab-
sence thereof, a person may contract in reference to
his realty as he will, provided he does nothing against
public policy or violates the rights of others in so
doing.   In Jones on Chattel Mortgages (5 Ed.), sec.
123, it is said: ''Many things ordinarily considered
fixtures to the realty may become to all intents and
purposes personal property, by agreement of all per-
sons interested in both the realty and fixtures.''   It
is true in the same section it is said there is a limita-
tion upon the rights of parties to change the status of
property by agreement; but it will be noticed that this
has reference to cases where the *essential character* of
the property itself is attempted to be changed, as for
instance, the bricks or joists after they have lost their
individual identity and have gone into the construction

of a house. Our Supreme Court has held that a house erected by one upon the land of another under an agreement that the house shall remain personalty and be removable continues to be personal property, as between the builder and the owner or any one claiming under him with notice, and can be removed by the owner. [Goodman v. Railroad, 45 Mo. 33; Priestly v. Johnson, 62 Mo. 632; Pile v. Holloway, 129 Mo. App. 593.] In Washburn v. Inter-Mountain Mining Co., supra (found also in 109 Pac. 382) it was held that a building and stamp mill, although permanently affixed to the real estate, remained personal property as between the seller and the buyer and also as to subsequent purchasers who have notice of the agreement. And it was also said that, "the strict rule that whatsoever is affixed to the soil partakes of the nature and becomes a part of the realty itself has been much relaxed to meet the requirements of manufacturing industries and trade relations, so that now the question whether an article of personalty, in its original state, has become a part of the freehold, depends upon three conditions: Annexation, real or constructive; adaptability to the use or purpose of the realty to which it is attached; and the intention of the party making the annexation to make it a permanent accession to the freehold. No doubt it was the intention of both Vinson and the defendant company to make the building and mill a permanent accession to the freehold. But the agreement amounts to a *stipulation* that, as between the parties to the agreement, it should remain personalty until the price was fully paid." (Italics ours.) Of course, in the absence of such an express stipulation, the three tests above mentioned should be looked to in order to determine whether the article in question constitutes an irremovable fixture, and, as said in 3 Words and Phrases, 2833, the intention of the parties is controlling. And in ascertaining such intention

the manner in which the machinery is affixed and the effect on the realty produced by its removal, are taken into consideration. But when there *is* an express stipulation that the machinery shall remain personalty, and that the seller shall have the right to remove it, if the deferred payments are not made, there is no need of looking for the intention of the parties to see whether it is removable. As said in Tifft v. Horten, 53 N. Y. 377, l. c. 380: "It may in this case be conceded, that if there were no fact in it but the placing upon the premises of the engines and boilers in the manner in which they were attached thereto, they would have become fixtures, and would pass as a part of the realty. But the agreement of the then owner of the land and the plaintiff is express, that they should be and remain personal property until the notes given therefor were paid; and by the same agreement, power was given to the plaintiffs, to enter upon the premises in certain contingencies, and to take and carry them away. While there is no doubt but that the intention of the owner of the land was that the engine and boilers should ultimately become a part of the realty, and be permanently affixed to it, this was subordinate to the prior intention expressed by the agreement. That fully shows her intention and the intention of the plaintiffs, that the act of annexing them to the freehold should not change or take away the character of them as chattels, until the price of them had been fully paid. And as parties may by their agreement expressing their intention so to do, preserve and continue the character of the chattels as personal property, there can be no doubt but that as between themselves, the agreement in this case was fully sufficient to that end." In this case cited the engine and boiler were set up and a house was built over them and the engine was attached to and used to operate machinery in another building on the land. It was held that the engine and

boiler remained personal property although not removable without some injury to the building in which it was located. It was also held that, where there was an *express agreement* that the property should remain personalty, the only limitation upon such agreement was where the property could not be removed without practically destroying it or where it is essential to the support of that to which it is attached.

In Lake Superior, etc., Ry. v. McCann, 86 Mich. 106, an engine and boiler and their attachments were set in masonry and firmly attached to the land. There was an express agreement to treat them as personal property, and it was held that they remained personalty and, in view of such express agreement, it became entirely immaterial how they were fastened to the soil or to the buildings.

In Marshall v. Bacheldor, 47 Kan. 442, it is held that, in the sale of personal property to be affixed to realty, the contracting parties at the time of the sale, have the power, *as between themselves,* at least, to fix the status of such property. See, also, 19 Cyc. 1048 as to such agreements, and announcing the rule that the agreement, though not expressly stipulated, may be *implied* from the giving of a chattel mortgage or accepting the property under a conditional sale.

It is true in many cases, even where it is held that the property remains personalty, it is said, speaking in general terms, that a fixture will remain personal property if it can be removed without destroying the article itself, or without serious or material injury to the freehold. But, in nearly all of them, illustrations are used showing that this refers to property that has become so completely merged into the real estate as to lose its identity and its essential character is changed, as for example, the separate bricks, beams, etc., of which the walls of a house are composed. Such a case is Ford v. Cobb, 20 N. Y. 344. In other cases,

the rights involved were not confined to the parties to the agreement, but the rights of others had intervened, as, for example, the case of In re Williamsburg Knitting Mill, 190 Fed. 871. In this case, too, there was neither actual nor constructive notice to the third party. The same is true of Holt v. Henley, 193 Fed. 1020. In yet other cases, the reason the stipulation between the parties was not given effect was because to do so would contravene a statute. Such a case is Havens v. Fire Ins. Co., 123 Mo. 403. In that case it was sought to avoid the payment of the full amount of an insurance policy on real property because it was agreed in the policy that certain machinery attached to the realty should be regarded as personalty, but the court held that, as this would contravene the "valued policy" statute, the agreement could not be given effect. The court says, in passing on this case, that while it is true that under the common law whatever is affixed to the soil is thereby made a part of it, yet there are certain well-settled exceptions as to trade fixtures, and as to cases in which property so attached to and made a part of the real estate has, by agreement between the parties, been treated as personal property, in which cases "the law will regard their agreements and so consider it." The case of Ginners, etc., v. Wiley & House, 147 S. W. 629, was also decided in reference to a statute affecting the agreement.

In fact many cases apparently conflicting with the view herein expressed, may be found in other states, but, upon examination, it will be observed that the seeming conflict arises either from the use of general language used to define a fixture, or because of the relation of the parties, or because of what is relied upon to show the agreement whether it is an express written stipulation or is to be inferred from the contract that was made.

174 Mo. App.—32

It should be borne in mind that this is not a case where the articles were first attached to the realty and then were afterward attempted to be treated as personal property. Here, it was personalty, and it was agreed that the property should remain personalty *before* it went upon the real estate. Many of the cases holding void an agreement that certain things should be regarded as personal property are cases where the agreement was made *after* the thing had actually become real estate. There is a difference between agreements made before and after the subject-matter of the agreement has become real estate. [Jones on Chattel Mortgages (5 Ed.), secs. 128, 130, 132a.] Especially where such agreement is merely implied from the giving of a chattel mortgage thereon.

The only limitation on the power of the parties, as between themselves and those claiming under them with notice, to stipulate that property, personal in its essential character, should remain personalty after being attached to the realty, being that it must not be so incorporated into the realty as to lose its identity or essential character as personalty, it follows that the machinery in question remained personal property unless it lost its identity. But there is no evidence that such is the case. In fact it is evident, from all the testimony and the nature of the machinery, that it did not lose its identity. Nor was it destroyed in removing it. It is true there is a statement that some parts were practically destroyed but this only referred to the pieces of iron by which the machinery was fastended in place and not to the machinery itself. There being no question or dispute in the testimony over whether the machinery had lost its identity, and the agreement as to its remaining personalty being in written documents whose authenticity were unquestioned, as was also the fact that defendant had actual notice thereof, and in fact took the property ''subject to''

the rights of the plaintiff, there was nothing for the court to submit to the jury, and, therefore, the court did not err in directing a verdict for plaintiff.

It is urged that the court should have allowed defendant to prove that certain articles were taken under the writ which were not sold by plaintiff to defendant. These were not in the list of the articles sued for, nor in the return of the sheriff as having been taken by him under the writ. The answer did not set up anything about these alleged additional or outside articles. Nor did defendant ask leave, or offer, to amend the answer so as to include them when the evidence as to such articles was excluded. Consequently those articles are not within the issues made by the pleadings, and the case must not be reversed on that account. The judgment is affirmed. All concur.