V. H. CARROLL, Trustee Holliman Drilling Company, a corporation, Appellant,

v.

Lorena Morris HOLLIMAN, Appellee.

In the Matter of HOLLIMAN DRILLING COMPANY, a corporation.

No. 7457.

United States Court of Appeals Tenth Circuit.

Aug. 21, 1964.

Rehearing Denied Oct. 12, 1964.

426

Robert L. Cox, Oklahoma City, Okl. (James R. Eagleton, Oklahoma City, Okl., with him on the brief), for appellant.

John H. Cantrell, Oklahoma City, Okl. (James A. DeBois, St. Louis, Mo., and Quinlan, Allen & Batchelor, Oklahoma City, Okl., of counsel, with him on the brief), for appellee.

Before PHILLIPS and SETH, Circuit Judges, and ARRAJ, District Judge.

ARRAJ, District Judge.

The Holliman Drilling Company, a Delaware Corporation, filed a voluntary bankruptcy petition in the United States District Court for the Western District of Oklahoma on December 27, 1962. It was duly adjudicated bankrupt, and V. H. Carroll, appellant, was appointed trustee.

On January 29, 1963, the trustee filed a petition with the Court claiming three oil and gas leases known as the Reeves lease, the Pybas lease (both located in Texas) and the Morgan lease (located in Oklahoma) as assets of the bankrupt estate. In the petition, the trustee acknowledged that Lorena Morris Holliman, appellee herein, claimed interests in the leases, but denied the validity of her claim. Accordingly, he prayed for an order of sale of the three leases free and clear of any liens, encumbrances or claims. On January 30, 1963, he amended his petition to allege that if the interests claimed by Mrs. Holliman were valid, they should be set aside as voidable preferences under Section 60 of the Bankruptcy Act. An Order to Show Cause, and an Amendment thereto, duly issued, and an evidentiary hearing was held at which the following facts were adduced.

Mrs. Holliman is the wife of C. I. Holliman, president of the bankrupt company. On October 8, 1957, she loaned $70,000.00, which was indisputably her sole and separate property, to the Company. In return, she received a promissory note from the Company dated October 8, 1957, payable on demand and due October 8, 1958, with six percent interest payable monthly. The Company also assigned the three leases as security for the loan. On the same day, the parties entered into a letter agreement which expressly provided that the assignments were made "as additional security" for the note, that Mrs. Holliman would hold the assignments in escrow, and that they would not be recorded unless payment on the note was defaulted.

On the due date of the note, the Company issued a renewal note to Mrs. Holliman. It, like the original, was payable on demand, due one year later (October 8, 1959), with six percent interest monthly. The original note was marked "renewed" and returned to the Company.

During the Company's 1959–1960 fiscal year, $30,000.00 was paid on the principal of the renewal note. No principal was paid either prior or subsequent to that time. Interest on the note was paid through December 8, 1962.

Mrs. Holliman retained the assignments in her personal safety deposit box,

to which she alone had access, from the time of assignment until recording in December, 1962. Oil runs from the three leases were at all times paid to the Company, not to Mrs. Holliman.

Financial statements of the Company prepared by a firm of certified public accountants at the close of each fiscal year showed deficits for each year ranging from $113,931.36 (as of May 31, 1957, which was not a complete fiscal year) to $507,562.00 (as of May 31, 1962). None of the statements showed a profit. Mr. Holliman, however testified without contradiction that the financial statements were based on the book value of equipment, which was lower than market value, and that, in his opinion, the Company was solvent on October 8, 1957. The statements for fiscal years ending May 31, 1958 through May 31, 1962, showed the indebtedness due Mrs. Holliman as a corporate liability secured by "certain producing oil and gas properties." These statements were furnished creditors of the Company if requested, although Mr. Holliman conceded that if the Company's creditors had realized that the three leases had been assigned they probably would not have extended further credit.

Mrs. Holliman was not a stockholder, director or officer of the Company. She had no knowledge of the Company's business and financial transactions, and she had never seen a financial statement or the books or records of the Company. She knew that the Company lost money "at times", but she did not know at the time she recorded the assignments that the Company was insolvent. She was, however, "worried for fear that might be the case." She did not know that the Company's bills were not being promptly paid. Her husband did not discuss his business at home very much, but he was troubled and not sleeping well.

In early December of 1962, Mr. Holliman, while consulting their attorney, Mr. Sanford, in Dallas, about other matters, mentioned the assignments which Mrs. Holliman held. Mr. Sanford said that they "should have been recorded a long time ago" and advised that Mrs. Holliman should record them. Mr. Holliman conveyed this advice to Mrs. Holliman, and she, with the consent of the Company, sent the assignments in to be recorded immediately thereafter. The two Texas leases were recorded in Texas on December 8, 1962, in the Deed Records; the Oklahoma lease was recorded in Oklahoma as an assignment of an oil and gas lease on December 10, 1962. The letter agreement which showed the intention of the parties that the assignments were for security only was not recorded. Mr. Holliman first knew that the Corporation would go into bankruptcy after consulting his attorney, Mr. J. D. DeBois, of Duncan, Oklahoma, on December 22, 1962.

At the evidentiary hearing before the Referee, the trustee attempted to establish his case solely by cross-examination of Mr. and Mrs. Holliman. He produced no witnesses of his own, and introduced only one exhibit—the financial statement of the company as of May 31, 1957. The Referee noted the following in regard to the demeanor and credibility of the witnesses:

> "Lorena Morris Holliman testified in a straightforward manner in tone, demeanor and appearance to be worthy of belief, with no attempt on her part to be evasive or vague. Extensive cross-examination by the attorney for the trustee did not produce any change, confusion or retraction of her direct testimony. The testimony of C. I. Holliman substantiated his wife's testimony and extended cross-examination by the trustee's attorney resulted in no substantial change in his direct testimony."

On the basis of the evidence, the Referee found that the Trustee had failed to prove that the assignments were "for or on account of an antecedent debt" and that Mrs. Holliman " * * * had reasonable cause to believe that the debtor was insolvent." Accordingly, he concluded that the assignments did not constitute voidable preferences under Sec-

tion 60 of the Bankruptcy Act and Ordered the sale of the leases subject to Mrs. Holliman's security interest in the principal amount of $40,000.00.

Trustee petitioned for review and the Referee certified the following question to the District Court: "Are the assignments of certain interest in oil and gas leases to Lorena Morris Holliman preferential transfers as defined in Section 60 of the Bankruptcy Act and hence invalid as against the trustee?" The District Court confirmed and adopted the Findings of Fact and Conclusions of Law of the Referee and denied the petition for review.

■ In our view, the determinative issue on the basis of this record is whether Mrs. Holliman had reasonable cause to believe that the Company was insolvent at the time she caused the assignments to be recorded. Such reasonable cause to believe, outlined by Section 60, sub. b of the Bankruptcy Act, is an essential element of a voidable preference.[1] We therefore need not decide whether the assignments were for or on account of an antecedent debt, unless the issue of reasonable cause can be decided in favor of the trustee. We do not think it can.

■ The test of "reasonable cause" as defined in this Circuit is " * * * if the creditor has knowledge or notice of facts and circumstances which would incite a person of reasonable prudence under similar conditions to make an inquiry and, if such an inquiry would lead to the development of facts essential to the knowledge of the situation, the creditor is chargeable with such knowledge."[2] The test is an individualized one; what may amount to reasonable cause in one

case may only constitute suspicious circumstances in another.[3] The finding below must therefore be viewed in the light of the facts, circumstances and surroundings of this case, and it will not be disturbed unless clearly erroneous.[4]

■ The strongest evidence in appellee's favor is Mrs. Holliman's statement that she was "worried for fear" the Company might be insolvent. Appellee argues in effect that this "worry" in conjunction with her husband's role as intermediary between her and her attorney two weeks before the decision was made to put the Company in bankruptcy constitutes reasonable cause. We do not think that her worry "for fear", especially in view of the Referee's comments quoted above regarding the demeanor and credibility of the Hollimans as witnesses, constitutes reasonable cause. Nor does the fact, in the light of this record, that she was the wife of the president of the Company.

> "Mere kinship between a debtor and a creditor does not warrant the inference that the creditor has knowledge of the financial condition of the debtor. Such knowledge is not a normal or natural incident of kinship." Vance v. Dugan, 187 F.2d 605, 606 (10th Cir. 1951).

The evidence here is compelling that Mrs. Holliman did not have knowledge of the Company's insolvency. Certainly it cannot be said that the finding below was clearly erroneous.

■ Appellant raised the additional question in his brief whether he should have taken title to the leases free and clear of Mrs. Holliman's security interest under Section 70, sub. c of the Bankruptcy Act.[5] Under this Section,

---

1. "Subdivision *b* is the enforcing provision of Section 60; and, as stated previously, presents a further essential element which must be proved to exist before a transfer otherwise preferential under Section 60 may be avoided." 4 Collier, Bankruptcy at p. 987 (14th Ed.).

2. Moran Bros., Inc. v. Yinger, 323 F.2d 699, 702 (10th Cir. 1963).

3. See discussion in 3 Collier, Section 60.-54 at p. 1000 (14th Ed.).

4. Moran Bros., Inc. v. Yinger, supra at 702; Washington v. Houston Lumber Co., 310 F.2d 881, 882–883 (10th Cir. 1962).

5. The trustee argued in his brief that section 70, sub. a(5) was applicable here. However, in support of his argument he cited Cooper Grocery Co. v. Park, 218 F. 42 (5th Cir. 1914) which turns on Section 47, sub. a(2), the statutory predecessor to Section 70, sub. c of the present

the trustee is given the status of an ideal lien creditor whose priority is determined by the substantive law of the state in which the property is situated.[6] Accordingly, the question is whether there is, in the case of the Oklahoma lease, any creditor who could have acquired a lien of any kind under Oklahoma law on the date of bankruptcy superior to the interest of Mrs. Holliman, or, in the case of the two Texas leases, whether there is any creditor who could have acquired a lien under Texas law superior to the interest of Mrs. Holliman.

It is unnecessary to discuss in detail the nature of the assignments made here. Clearly the transaction contemplated by the parties was the creation of a security interest. As noted by the referee, "It is admitted by all concerned that the above assignments were intended only as security to secure the above loan." Moreover, it is clear that the evidence would support a finding under the laws of both Texas and Oklahoma that the transactions constituted mortgages.[7]

Leaving aside the troublesome problem of labeling the interest of an oil and gas lessee under Oklahoma law,[8] it is settled that a mortgage of such an interest must be recorded in Oklahoma as a real estate mortgage[9] and that if it is not so recorded, it has the status only of an unrecorded mortgage.[10] However, even so considered, Mrs. Holliman's interest in the Oklahoma lease is superior to that of the trustee who occupies the position of a lien creditor without notice[11] under Oklahoma law, and not that of a bona fide purchaser.[12] He does not

---

Bankruptcy Act. Under these circumstances, it is difficult to determine what part of section 70 the trustee relies on. After an examination of both subdivisions in the light of the facts of this case, we agree with the observation in 4 Collier, Bankruptcy at p. 1403 that "* * * in all reported cases Section 70c does everything that Section 70a(5) does and more besides" and have therefore chosen to discuss only the section 70, sub. c question. In discussing this question, we do not decide whether it is properly before the Court, not having been certified by the referee to the District Court.

6. Porter v. Searle, 228 F.2d 748, 750 (10th Cir. 1955) ; Fowler v. Pennsylvania Tire Co., 326 F.2d 526, 530 (5th Cir. 1964).

7. See especially Carter v. Sapulpa & I. Ry. Co., 49 Okl. 471, 153 P. 853 (1915); 46 Okl.Stat.Ann. § 1; 42 Okl.Stat.Ann. § 6; Kennard v. Mabry, 78 Tex. 151, 14 S.W. 272 (1890) ; Long v. Fields, 31 Tex. Civ.App. 241, 71 S.W. 774 (1903) ; Hamilton v. Green, 101 S.W. 280 (Civ.App. Tex.1907).

8. An oil and gas lease under Oklahoma law "is a hybrid estate deriving its legal characteristics from both real and personal property, yet it is actually neither. * * * It is personalty * * * and also an interest in land." Continental Supply Co. v. Marshall, 152 F.2d 300, 305 (10th Cir. 1945). See the discussion of the various ways in which such

an interest has been treated in Oklahoma at pp. 305–306 of Continental Supply Co. v. Marshall, supra, and in Phillips Petroleum Co. v. Jones, 176 F.2d 737 (10th Cir. 1949). See also the general discussion in 2 American Law of Property, Section 10.26 which shows the inconsistent results reached in different jurisdictions—and even within the same jurisdiction—on this question.

9. Continental Supply Co. v. Marshall, 152 F.2d 300, 306 (10th Cir. 1945).

10. 46 Okl.Stat.Ann. §§ 8, 10; Pierson v. McCrory, 93 Okl. 117, 219 P. 641 at p. 643 (1923) in which the Court said: "The assignment was recorded in the proper book for recording such instruments, and not in the mortgage record, and we think *was of the effect of an unrecorded mortgage*, good as between the parties, but not good as against incumbrancers for value without notice."

11. Bergin v. Waterson, 279 F.2d 193, 196 (10th Cir. 1960); In re Production Aids Co., 193 F.Supp. 180 (S.D.Iowa, 1961) and cases cited therein at p. 189. See also discussion in 4 Collier, Bankruptcy, Section 70.53.

12. See discussion in 4 Collier, Section 70.52 and Section 70.55, especially at p. 1450. This status is especially pertinent in this case inasmuch as 16 Okl. Stat.Ann. § 15 which provides, inter alia, that "* * * no * * * mortgage * * * shall be valid as against third persons unless acknowledged and recorded

receive constructive—or even inquiry—notice by virtue of the defective recording,[13] and, as a judgment creditor under Oklahoma law, he acquires a lien only on the actual interest of the judgment debtor.[14] Appellant has cited no authority, and we have found none, by which a lien creditor could acquire any greater interest under Oklahoma law. It is therefore clear that the Court below was correct in holding that the trustee took title to the Oklahoma lease subject to Mrs. Holliman's security interest.

The result is the same with respect to the Texas leases, although the Texas law is considerably different from the Oklahoma law in several respects. It is well settled in Texas that oil and gas leases are real property interests and are subject to the recording statutes.[15] By statute, it is provided that recorded mortgages shall be valid not only as to subsequent bona fide purchasers, but also as to all who have become creditors from the time the mortgage was delivered to the clerk for recording,[16] and recording a mortgage as an absolute conveyance in the deed records does not remove it from the protection of the statutes, even though it is directed by statute[17] that mortgages be recorded in a separate book.[18] Clearly, under Texas law, a creditor who acquired a lien on the date of bankruptcy would be subject to Mrs. Holliman's security interest in the leases. The trustee is in no better position. The Findings of Fact and Conclusions of Law made by the Referee and adopted and confirmed by the Trial Court are not clearly erroneous. The judgment is affirmed.

as herein provided" has been construed to protect only innocent purchasers for value. Gamble v. Cornell Oil Co., 260 F. 2d 860 (10th Cir. 1958) and cases cited therein at p. 868. Since the trustee does not have that position, the statute is of no aid to him.

13. See footnote 10 supra regarding constructive notice. The Oklahoma cases regarding inquiry notice have their basis in 25 Okl.Stat.Ann. § 13, which reads as follows:

"Every person who has *actual notice* of circumstances sufficient to put a prudent man upon inquiry as to a *particular fact,* and who omits to make such inquiry with reasonable diligence, is deemed to have constructive notice of the fact itself." (Emphasis added.)

We do not think this statute can be construed to mean that *constructive* notice of circumstances sufficient to put a prudent man on inquiry as to a particular fact can be deemed to be *constructive* notice of the fact itself without doing violence to the plain meaning of the statute and nullifying the recording statutes.

14. Oklahoma State Bank of Wapanucka v. Burnett, 65 Okl. 74, 162 P. 1124, 1126–1127, 4 A.L.R. 430 (1917).

15. W. T. Waggoner Estate v. Sigler Oil Co., 118 Tex. 509, 19 S.W.2d 27; Sheffield v. Hogg, 124 Tex. 290, 77 S.W.2d 1021, at p. 1024 (1934) in which the Court said:

"The oil industry in Texas is largely dependent for development, growth, or prosperity, on the doctrine that the interest we are considering—such as the lessee's and the lessor's estates under contracts which are in customary use in Texas—are interest in land; and * * * have the protection of * * * the statutes regulating conveyances and mortgages of real estate, and the statutes requiring the record of instruments affecting title to or liens on land, so that purchasers can rely on deed and lien records * * *."

See also 2 Summers, Oil & Gas, Section 557 at pp. 699–701.

16. 19 Vernon's Tex.Civ.Stat. art. 6631.

17. 19 Vernon's Tex.Civ.Stat. Art. 6601.

18. See Texas cases cited in footnote 7 supra.