LEAWOOD NATIONAL BANK OF
KANSAS CITY, Appellant,

v.

The CITY NATIONAL BANK & TRUST
COMPANY OF KANSAS CITY,
Respondent.

No. 25426.

Kansas City Court of Appeals,
Missouri.

Dec. 9, 1971.

Max O. Bagby, Dean F. Arnold, Bagby, Benjamin, Arnold & Biersmith, Kansas City, Mo., for appellant.

Robert I. Donnellan, James F. Duncan, Charles E. Patterson, Kansas City, Mo., for respondent; Watson, Ess, Marshall & Enggas, Kansas City, Mo., of counsel.

SHANGLER, Presiding Judge.

In this action for conversion, appellant Leawood National Bank of Kansas City claims ownership and right to possession, as lessor, of certain hydraulic lifts installed in the shop area of a building then owned by Hilliard Chevrolet Company. The respondent City National Bank & Trust Company of Kansas City was the holder of a first deed of trust on the Hilliard premises, and when Hilliard was thereafter adjudicated a bankrupt, purchased the land and building at a bankruptcy sale. The deed of the trustee in bankruptcy conveyed the property to respondent City National "free and clear of all liens and encumbrances whatsoever". Respondent refused to permit appellant to remove the lifts and

subsequently sold a number of them to a third party. This action ensued.

The jury returned a verdict for plaintiff, this appellant, and awarded damages in the sum of $2400. Notwithstanding the verdict, the trial court entered judgment for defendant, this respondent, on the ground that as a matter of law "the hydraulic lifts were fixtures and attached to the real estate and not personal property".

It appears conclusive, and the parties do not dispute, that the building on the Hilliard property was constructed for use as a retail automobile sales and repair agency. Some time during the course of construction, Hilliard had acquired and installed the hydraulic lifts in the garage area of the building. Some time later, Hilliard sought to finance this purchase and had, in fact, entered negotiations to that end with another source. At that time, Conrad Smith, then assistant vice-president of appellant Leawood National Bank, was in the part-time employ of Hilliard as an automobile salesman. He learned of Hilliard's purpose to seek financing of the equipment and expressed Leawood National Bank's interest in furnishing it. On December 15, 1965, Hilliard and appellant entered into an arrangement whereby Hilliard sold the hydraulic lifts and other equipment to appellant and appellant, on the same day, leased the equipment back to Hilliard. At the time of this transaction, appellant knew that the equipment had already been installed and was in place on the Hilliard premises. The lease was never recorded. (It is to be noted that the first deed of trust on the premises from Hilliard to respondent City National Bank was executed and recorded on August 19, 1965. It does not appear, however, whether the lifts were then in place.)

Among its numerous provisions, the lease recited that: "The equipment is, and shall at all times be and remain personal property, notwithstanding that the equipment or any part thereof may now be, or hereafter become, in any manner affixed or attached to, or imbedded in or perma-

nently rested upon real property. . . .". Appellant contends that this and other provisions of the lease establish its own intention and that of Hilliard that the hydraulic lifts should retain their character as personal property and, therefore, the lifts did not pass under the deed from the bankruptcy trustee. To this, respondent replies that the instrument although cast in the form of a lease was actually the means of financing the purchase of the lifts, was intended as a security device, and created a security interest in the equipment in favor of appellant which, because not perfected, was cut off when respondent purchased the realty at the sale of the trustee in bankruptcy.

A proper determination of the issue presented does not require us to determine whether the sale-leaseback was in legal effect a security agreement rather than a lease. For the purpose of decision, we assume as proved, appellant's trial theory that the arrangement between itself and Hilliard was that of lease. We conclude, nonetheless, that the hydraulic lifts had become attached to the soil and thus were fixtures before the execution of the lease and remained fixtures as to the trustee in bankruptcy, from whom respondent derives title, who stood in the position of an ideal lien creditor without knowledge of the lease or the severance agreement which it contained. Sec. 70, sub. c of the Bankruptcy Act, 11 U.S.C. Sec. 110(c); Sequoia Machinery, Inc. v. Jarrett (9 CCA), 410 F. 2d 1116, 1119 [3]; Carroll v. Holliman (10 CCA), 336 F.2d 425, 429[8]; In re Schindler, U.S.D.C., Ed.Mo., 223 F.Supp. 512, 519[5]; Collier on Bankruptcy, 14th Ed., Sec. 70.53.

The hydraulic lifts were of two kinds, those for hoisting automobiles, and others for heavier vehicles. Each had a mechanism consisting of an outer cylinder, about eight feet high, which was embedded in six to eight inches of reinforced concrete. The lifting device, a piston enclosed within the cylinder with a rack atop, was actuated by hydraulic pressure furnished through a

system of pipework connected to a tank which was buried in sand beneath the floor surface and covered by concrete. In removing the lifts a section of the concrete floor, four feet square, was cut around each lift with a diamond blade masonry saw. A jackhammer was then used to break off the concrete from around the lifts, the lifts were dug out, the holes refilled and the concrete replaced. The cost of removing the lifts and repairing the concrete floor was $1188.

"A fixture is an article of the nature of personal property which has been so annexed to the realty that it is regarded as a part of the land and partakes of legal incidents of the freehold and belongs to the person owning the land. The term is expressive of the act of annexation and necessarily implies something that has existed apart from realty but which may, by being attached thereto, become a part thereof." Bastas v. McCurdy, Mo.App., 266 S.W.2d 49, 51[1–3]. The general tests for determining whether a particular object has become a fixture are commonly said to be annexation to the realty, adaptation to the use to which the realty is devoted, and intention that the object become a permanent accession to the land. Of these, the intention is of paramount importance, and sometimes controlling. American Clay Machinery Co. v. Sedalia Brick & Tile Co., 174 Mo.App. 485, 160 S.W. 902, 906[11]. Thus, a landowner may enter into a special agreement with another that, as between themselves, an object which would normally be a fixture shall remain personalty (Glueck & Co. v. Powell, 227 Mo.App. 1226, 61 S.W.2d 406, 408[3]), or —as in this case—that an object already affixed to the land shall be deemed permanently severed and reacquire the character of personal property. Denvir v. Crowe, 321 Mo. 212, 9 S.W.2d 957, 959[3]; Luhm-ann v. Schaefer, Mo.App., 142 S.W.2d 1088, 1090[3, 4]. But no such agreement, or the intention which it discloses, can be given effect as against third parties without notice whose rights have intervened. Stockton v. Tester, Mo.App., 273 S.W.2d 783, 787[7].

There can be no doubt that at the time the hydraulic lifts were installed it was the intention of Hilliard that they should be permanently affixed to the realty and form a part of the special purpose for which the building was constructed, as a retail automobile sales and repair agency. Nor can there be any doubt that the equipment was, in fact, very firmly attached and could not be dislodged without much effort, expense and damage to the freehold. While the character of an object as a fixture is not determinable by the mode of affixation alone, where, as here, the object in its affixed form is a useful adjunct or convenient accessory to the business conducted on the premises, the intention of the landowner to annex it permanently to the realty may be inferred. St. Louis Radiator Mfg. Co. v. Carroll, 72 Mo.App. 315, 319[2]; Banner Iron Works v. Aetna Iron Works, 143 Mo.App. 1, 122 S.W. 762, 764[6]; Sims v. Williams, Mo.App., 441 S.W.2d 385, 389. At the time of the sale-leaseback between appellant and Hilliard, the hydraulic lifts were part of the land owned by Hilliard and remained so as to respondent City National Bank, purchaser at the trustee's sale, without notice of the severance provisions of the lease. There was no evidence that respondent at any time had actual knowledge of the intention of appellant and Hilliard to constructively unfix the equipment as to render it personal property once again.[1] Nor could respondent have been charged with constructive notice of such intention. A purchaser of realty is bound to take notice of the

---

1. Paragraph 5 of the instrument we assume to be a lease provided in part: "Upon receipt by Lessee from Lessor of any labels, plates, licenses or markings stating that the equipment is owned by Lessor, Lessee shall affix and keep such labels, plates, licenses and markings in a suitable and prominent place upon the equipment." It was not until after the bankruptcy petition had been filed that appellant Leawood National Bank affixed such labels to the lifts.

record title of realty. Kelvinator St. Louis v. Schader, Mo.App., 39 S.W.2d 385, 390. If the transaction between appellant and Hilliard was that of lease, it was the lease of property which had not only assumed the appearance of realty but which had in fact become realty so that the lease provisions undertaking to change the character of the property were not binding on respondent for want of record either as a conveyance of real estate or as an instrument affecting real estate. Secs. 442.380, V.A.M.S. 400.9–313(1), V.A.M.S., and see, Sec. 400.9–401(1) (b), V.A.M.S.

 The ownership of and right of possession to the hydraulic lifts which appellant asserts is against respondent City National Bank, not as a holder of a deed of trust on realty, but as the purchaser of land at a bankruptcy trustee's sale, and thus as successor to that trustee's title. The right, title and interest in a bankrupt's real property pass to the trustee in bankruptcy under Sec. 70, sub. a(5) of the Act upon the filing of the petition in bankruptcy. Appellant contends that the trustee in bankruptcy stood in the shoes of the bankrupt Hilliard and could convey only the title Hilliard had to give, and since the bankrupt and appellant had agreed the lifts should reacquire, and then retain, their character as personal property, the lifts did not pass under the deed of the trustee to respondent. While as a general rule the trustee succeeds only to such rights as the bankrupt had (Bank of Marin v. England, 385 U.S. 99, 87 S.Ct. 274, 276[3], 17 L.Ed. 2d 197), the trustee is also clothed with the rights of an ideal lien creditor without notice—a judgment creditor holding an execution returned unsatisfied as to all property upon which a creditor of the bankrupt could have obtained a lien by legal or equitable proceedings at the date of bankruptcy. Sec. 70, sub. c of the Bankruptcy Act; Collier on Bankruptcy, Sec. 70.04; 8 C.J.S. Bankruptcy § 199.[2] And what such a lien creditor gets is to be determined by the law of the state, Missouri in this instance.

 It has long been settled in Missouri that a judgment creditor holding a levy of execution takes against a conveyance of real estate which remains unrecorded at the time of the sale. Rehm v. Alber, 272 Mo. 452, 199 S.W. 170, 173[4]; Davis v. Owenby, 14 Mo. 170, 177; Givens v. Burton, 183 S.W. 617, 622[3]. Appellant's claim of interest in the Hilliard real estate under a conveyance which was never recorded, therefore, cannot hold against the execution levy of a trustee in bankruptcy.

 Appellant appears to contend that if not constructive notice, then respondent and the trustee had actual notice of appellant's interest in the lifts before the trustee's sale by which respondent acquired title to the Hilliard land, and therefore respondent took subject to appellant's known interest. At the trial appellant offered to prove that after the petition of involuntary bankruptcy was filed on January 28, 1967, appellant notified respondent of its claim to ownership of the lifts. Appellant also offered to prove that at the public vendue

---

**2.** This right accorded the trustee in bankruptcy by federal law is recognized by Sec. 400.9–301(3), V.A.M.S., of the Uniform Commercial Code which provides:
"A 'lien creditor' means a creditor who has acquired a lien on the property involved by attachment, levy or the like and includes an assignee for benefit of creditors from the time of assignment, and a trustee in bankruptcy from the date of the filing of the petition or a receiver in equity from the time of appointment. Unless all the creditors represented had knowledge of the security interest such ·a representative of creditors is a lien creditor without knowledge even though he personally has knowledge of the security interest." Assuming, as we do, that the arrangement between Leawood National Bank and Hilliard was that of lease, rather than a security device, the provisions of the Uniform Commercial Code are not applicable. We look to the Missouri law outside of UCC to determine the effect of Sec. 70, sub. c of the Act upon the transaction between them.

of the real estate, the trustee in bankruptcy read aloud appellant's letter asserting its claim of ownership of the lifts. These proffers were denied. It was shown that after the commencement of the bankruptcy proceedings, appellant for the first time affixed labels to the lifts bearing the legend "Property of Leawood National Bank", which labels remained affixed at the time of the sale of the Hilliard realty. Appellant's contention is not sound. The trustee in bankruptcy is vested by operation of law with the title of the bankrupt as of the day of the filing of the petition. Bank of Marin v. England, 87 S.Ct. 1. c. 276[3]. It is of that date, as well, that the status of the trustee as a creditor without notice is fixed and the exercise of his rights in that capacity is not affected by knowledge thereafter acquired. Collier on Bankruptcy, Sec. 70.53 and cases cited in footnotes 17, 18, 19 and 21.

The conveyance from the trustee in bankruptcy vested full title to the real estate in respondent free from appellant's claimed interest. The judgment is affirmed.

All concur.