In the Matter of Arch PETTIT and Ida Marie Pettit d/b/a Archangel Corporation, La Pettit Roche, Quapaw-Quarters Shops and Ener-Kleen, Debtors.

OTIS ELEVATOR COMPANY, Plaintiff,

v.

Arch PETTIT and Ida Marie Pettit, Defendants.

Bankruptcy No. LR 80–0627.
Adv. No. 80–0438.

United States Bankruptcy Court,
E. D. Arkansas, E. D.

Nov. 13, 1980.

---

Thomas P. Thrash and Allen W. Bird, II, Little Rock, Ark., for plaintiff.

Wright, Lindsey & Jennings, Little Rock, Ark., for defendants.

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND FINAL JUDGMENT GRANTING THE PLAINTIFF'S COMPLAINT FOR RELIEF FROM THE AUTOMATIC STAY TO RECOVER A CERTAIN ELEVATOR SYSTEM

DENNIS J. STEWART, Bankruptcy Judge.

The plaintiff distributor of elevator systems for installation filed its complaint herein on October 3, 1980, seeking, in substance, the reclamation of a certain elevator system which is currently located, uninstalled and still in the shipping crates, in one of the buildings owned by the debtors.

By agreement of the parties, an expedited trial of this matter was conducted by the court of bankruptcy on October 10, 1980, in Little Rock, Arkansas. The plaintiff appeared by counsel, Thomas P. Thrash, Esquire, and Allen Bird, Esquire. The defendants appeared personally and by Isaac A. Scott, Esquire, and John Tisdale, Esquire. Based upon the admissible and probative evidence then adduced, the following findings of fact are made.

I

On or about June 19, 1979, the plaintiff Otis Elevator Company contracted to sell an elevator system to one Thomas Coyne. The sale price was agreed to be $59,617.00, with the purchaser to make payments according to the following schedule: "20 per cent when the rails are ready for shipment; 50 per cent when the machine is ready for shipment; 20 per cent when the machine is in permanent position; and the remaining 10 per cent when the elevator is in running order." According to the uncontradicted evidence, only $19,617.00 of that sum has been paid and a balance of $40,000 is currently owed.

After Mr. Coyne entered into this contract, he became an employee of one of the debtors' corporations, La Pettit Roche, which had meantime purchased the building in which Mr. Coyne intended to install the elevator or cause it to be installed. He and Mr. Pettit then made plans to improve and utilize the building, which is located at 313 Main Street in Little Rock and to use the building thereafter for the purposes of the corporation.[1] These plans were made in joint discussions and consultations between Mr. Coyne and Mr. Pettit, although the former was not a shareholder or officer of the debtors' corporation, which was wholly owned by them.[2] According to the uncontradicted testimony of Mr. Pettit, there was the possibility of Mr. Coyne's in the future becoming a shareholder, and perhaps an officer, in the corporation if and when he obtained the capital to invest in it.

The elevator system was thereafter delivered to the building that the debtors had purchased. But there is no indication in any of the evidence that the plaintiff at this time knew anything of Mr. Coyne's relationship with the debtors and their corporation.[2a] The evidence taken in the course of the hearing is further to the effect that Mr. Coyne never purported to make any transfer, conveyance, or gift, formal or informal, of his right, title, and interest to the debtors or their corporation insofar as the elevator system was concerned. Rather, according to the uncontradicted testimony of Mr. Pettit in this regard, the elevator system— in crates—was in the building when he pur-

---

1. According to Mr. Pettit's testimony, it was planned by he and Mr. Coyne to rent office space in the building, with apartments on the top floors.

2. Mr. Pettit, in fact, testified that he alone owned 100% of the stock of La Pettit Roche. Coyne had "only a possibility to buy in."

2a. According to the uncontradicted testimony of David Hopper, the branch manager of Otis Elevator Company, the Otis Elevator Company records did not reflect any payment as having come from La Pettit Roche.

chased it and he simply assumed that it was part of the building. In so assuming, however, he must have had knowledge of the circumstances attendant upon Mr. Coyne's purchase of the elevator in his own name, for the debtors' corporation, sometime prior to the order for relief herein, made a $500 payment on the elevator system to the plaintiff.

## II

### Conclusions of Law

The facts, as found above, make it clear that neither the debtors nor their corporation can have any legal or equitable interest, within the meaning of sections 541 and 363 of the Bankruptcy Code,[3] in the elevator system. It is simply within the building owned by the debtors—uninstalled and still in crates—and the debtors have, prior to the date of the petition for relief, made one payment on Mr. Coyne's account with the plaintiff. These facts are not a sufficient basis upon which to predicate any interest in the elevator system. If that system were attached to the premises in such a fashion that it could actually be classified as a fixture, then a different result might conceivably be justified.[4] The evidence warranting the above findings of fact, however, requires that the elevator system be treated as a non-fixture. And, as a non-fixture, the elevator cannot be regarded as subject to any interest of the debtor. It was Mr. Coyne, rather, who contracted to purchase the elevator on his own credit and on whose behalf all the $19,617 which was paid toward the purchase price was remitted. And it was Mr. Coyne who, according to the uncontradicted evidence, actually made all but $500 of those payments. Any equity which is owned in the building is thereby owned by Mr. Coyne. There is no available theory under which that equity or any other interest can be claimed. It is even admitted by Mr. Pettit's testimony that Mr. Coyne in no manner purported to effect any transfer of that interest of the debtor.

It is true that, according to the debtors' contentions, the fair market value of the elevator system is now greater than the price for which it was purchased from plaintiff by Mr. Coyne. But the evidence to this effect is somewhat halting and of dubious probative value.[5] And, even if accepted, it cannot provide grounds for retention of property in which the debtors can claim no interest. The law of bankruptcy has always recognized the duty of a bankrupt

---

3. Generally, under the governing provisions of section 541 of the Bankruptcy Code, an estate "is comprised of . . . all legal or equitable interests of the debtor in property as of the commencement of the case." See also section 363(d) of the Bankruptcy Code, which pertinently provides that a trustee or debtor "may use, sell, or lease property . . . only to the extent not inconsistent with any relief granted under section . . . 362(d)." As is noted elsewhere herein, the section thereby adverted to, section 362(d), authorizes the granting of relief from the automatic stay with respect to property "if the debtor does not have an equity in such property; and . . . such property is not necessary to an effective reorganization." According to the legislative history under that section, the latter requirement is to provide for relief to the debtor involved in the business of renting and leasing the property which is sought to be returned to the creditor. As is elsewhere herein pointed out, there is no explicit proof that the property here involved is essential to the debtor's reorganization.

4. It was the uncertain testimony of Mr. Pettit in this regard that, at the maximum, the elevator was only "partially" installed and, substantially in total, was still in the crates in which it had been shipped. There was no evidence that removal would have required any considerable dismantling of the premises. If the elevator were installed and thereby attained the character of a fixture, it appears that the debtors' contention that the elevator should "go with the building" may be well founded. See, e.g., *Leawood National Bank v. City National Bank and Trust Co.*, 474 S.W.2d 641, 644, 645 (Mo. App.1971). But the evidence in this case only indicates that the elevator system is not a fixture.

5. In a prior hearing conducted by the court, Mr. Pettit had conclusionarily valued the elevator at approximately $70,000. In the hearing of the action at bar, after initially disclaiming any expertise in the fair market value of elevator systems, Mr. Pettit testified that, installed, the elevator system should bring $65,000–70,000. No opinion was actually expressed as to what it would bring uninstalled.

or debtor to relinquish control of property which is wholly owned by others.[6] And the concept of "adequate protection" under the new Bankruptcy Code cannot be stretched so far as to grant a debtor the right to use or sell property in which it can have no interest whatever. "The court shall grant relief from the stay if there is no equity and it is not necessary to an effective reorganization of the debtor." Legislative History to § 362(d), Title 11, United States Code. And cf. § 363, relating to adequate protection in respect to "cash collateral," which requires for its operation that *"the estate and an entity other than the estate have an interest."* (Emphasis added.) And, in the property sub judice, the estate has no demonstrable interest, nor has it been demonstrated by any evidence that it is any manner necessary to an effective reorganization.[7]

It would run wholly counter to the fifth amendment's recognition and protection, however minimal in the bankruptcy context, of property rights to hold that a debtor in title 11 proceedings may arrogate to his use or benefit property in which it can claim no interest. It would also run counter to concepts of traditional justice and fairplay; and would enhance the opportunities for fraud and concealment.

The matter of ownership and rights in the property, it must therefore be concluded, is one between the plaintiff and Mr. Coyne. Accordingly, this court cannot grant reclamation of the property because the estate is not properly in custody of the property and, further, Mr. Coyne has not been made a party to this action. It is imperative, however, that relief from the automatic stay be granted pursuant to section 362(d)(1) of the Bankruptcy Code.[8]

It is therefore, for the foregoing reasons,

ORDERED, ADJUDGED AND DECREED that the plaintiff be, and it is hereby, granted relief from the automatic stay with respect to the abovementioned elevator system.

6. "It is well settled . . . that property of a third person in the possession of a bankrupt . . . should not be included in the assets of the bankrupt's estate." 4 Collier on Bankruptcy para. 70.32 (1975).

7. Although the court had observed in commencing the trial hereof that it appeared that the property may be essential to a reorganization, no explicit proof of the essential character of this alleged piece of property was tendered. Indeed, there has as yet been no evidence of the value of the property of the estate in general.

